**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| In re: | |
| Roman Catholic Diocese of Burlington, Vermont,[1] | Case No.: 24-10205-HZC<br>Chapter 11 Case |
| Debtor. | |

**DIOCESE'S OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING AND DIRECTING THE PRODUCTION OF DOCUMENTS**

The Roman Catholic Diocese of Burlington, Vermont (the "Diocese"), files this objection to the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing and Directing the Production of Documents* (the "Motion") filed by the Official Committee of Unsecured Creditors (the "Committee"). (ECF No. 226.) While the Diocese acknowledges the Committee's entitlement to information regarding the Diocese's financial condition, the Diocese objects to entry of any order directing it to produce documents of third-party entities or requiring those entities to produce documents without receiving service of the Motion. The Committee cannot use the fact that an entity may "operate within the region of the Diocese" as a basis for the Diocese, or these other entities, to produce any information related to such entities, especially entities that did not receive service of the Motion. Simply put, there is no basis or authority for directing *the Diocese* to produce the documents of a *third party*.

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Diocese's address is 55 Joy Drive, South Burlington, Vermont 05403, and its Employer Identification Number (EIN) is 03-0180730.

Additionally, the Committee's proposed document requests, even if solely directed at the Diocese, are overly broad and unduly burdensome in their current form.

For these reasons, as well as the reasons described below, the Motion must be denied.[2]

## BACKGROUND

The Diocese serves the entire state of Vermont, comprising approximately 9,135 square miles (the "Diocese's Region"). (ECF No. 13, ¶ 8.) The Diocese's Region contains 63 parishes. (*Id.* ¶ 9.) Separate trusts hold all assets attributable to a specific parish and the Diocese does not control the finances or operations of the parishes or the trusts. (*Id.*) In addition to the 63 parishes, there are 12 Catholic schools and a catechetical system (collectively, the "Schools"), educating students from pre-kindergarten through high school, with a total current enrollment of approximately 2,500 students. (*Id.* ¶ 11.) The majority of the Schools are operated and controlled by specific parishes. (*Id.*) Along with the parishes and Schools, various other Catholic-based social and community service organizations operate within the Diocese's Region, including Vermont Catholic Community Foundation ("VCCF") and Vermont Catholic Charities ("VCC"). (*Id.* ¶ 12.) These other organizations are separately incorporated Catholic entities and not under the fiscal or operating control of the Diocese. (*Id.*) The Diocese provides financial services to some of the parishes, Schools, and other Catholic-based entities pursuant to service contracts. (*See, e.g.*, ECF No. 58, ¶¶ 19, 28, 34.) Based on those contracts, the Diocese holds certain information in its possession that belongs to the parishes, Schools, and other Catholic-based entities.

---

[2] The Diocese recognizes that the Committee has the right to information regarding the Diocese's financial condition and other information necessary for the administration of the case. As more fully discussed below, the Diocese remains committed to providing that information to the Committee. However, the Diocese files this Objection to preserve its ability to object to, or otherwise challenge, the specific underlying discovery requests attached to the Motion.

2

On September 30, 2024 (the "Petition Date"), the Diocese filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (ECF No. 1.) On October 22, 2024, the Office of the United States Trustee appointed the Committee. (ECF No. 52.) The Committee retained Pachulski Stang Ziehl & Jones ("PSZJ") on or around November 12, 2024. Also on November 12, 2024, the Committee filed an application to employ Lemery Greisler LLC ("Lemery," and together with PSZJ, "Committee Counsel") as counsel for the Committee and local counsel to PSZJ. (ECF No. 104.) On November 13, 2024, the Committee formally filed an application to employ PSZ as counsel for the Committee. (ECF No. 106.) The Court granted the application and approved Lemery's employment on December 30, 2024. (ECF No. 145.) The Court granted the application and approved PSZJ's employment on January 3, 2025. (ECF No. 151.) The Diocese's counsel and Committee Counsel meet regularly and exchange information.

On February 3, 2025, the Committee shared its draft of its proposed document requests with the Diocese. Since that time, the Committee and the Diocese met and conferred regarding the requests. While the Diocese remains committed to providing necessary documentation to the Committee, the Diocese expressed concerns to the Committee regarding the proposed document requests, particularly as to their inclusion of documents belonging to the alleged "Diocese Enterprise Members" and requesting of documents spanning 25 years or more.[3]

Thereafter, on March 4, 2025, the Committee filed its Motion. Pursuant to the Motion, the Committee seeks entry of an order "authorizing and directing the production of documents by the Diocese described in Exhibit A-1." (Mot. ¶ 14.) This requested relief includes the required

---

[3] Based on those discussions, the Committee revised the proposed document requests to include different stages. The Diocese appreciates that revision and remains committed to working with the Committee to continue to find practical resolutions regarding issues related to specific document requests.

3

production of information and documents "for each Diocese Enterprise Member." (*Id.* ¶ 16.) The Motion defines the term "Diocese Enterprise Member" to include any "entity that is *either* the [Diocese], [*or*] *a parish, a parish trust, a cemetery, or a Catholic-based service organization, such as Vermont Catholic Community Foundation, Priest Benefit Fund*, Vermont Catholic Charities, Inc. . . ."[4] (*Id.* ¶ 7 (emphasis added).)

The Committee admits that its proposed document requests "are similar to the requests utilized in other diocesan bankruptcies . . . ." (*Id.* ¶ 16.) The Committee served the Motion on the Diocese but failed to serve the Motion on any of the alleged Diocese Enterprise Members. (*See* ECF No. 226-3.)

### ANALYSIS

Federal Rule of Bankruptcy Procedure 2004(a) states, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Subsection (b) of Fed. R. Bankr. P. 2004 then defines the scope of the examination. It states, "[t]he examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

While broad at first glance, this rule is not without limitations. *See, e.g.*, *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."); *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("However, the scope of the examination is not limitless; the examination should not be so broad as to be more disruptive and costly to the debtor

---

[4] The Diocese objects to the term "Diocese Enterprise Member" as the included third-party entities are not members of the Diocese in any capacity. Nonetheless, for ease of reference, the Diocese refers to these entities as Diocese Enterprise Members solely for the purposes of responding to the Motion.

4

than beneficial to the creditor.") The moving party—here, the Committee—bears the burden of showing good cause for the requested examination. *See In re Serignese*, 2019 WL 2366424, at *2 (Bankr. S.D.N.Y. June 3, 2019) ("The Movants bear the burden of showing good cause for the [Rule 2004] examination they are seeking.").

I. **THE COMMITTEE WRONGFULLY REQUESTS AN ORDER REQUIRING THE PRODUCTION OF DOCUMENTS FROM NON-DEBTOR ENTITIES.**

The Committee wrongfully attempts to treat the Diocese and the alleged Diocese Enterprise Members as one entity through its Motion. The Diocese strongly disputes that the alleged Diocese Enterprise Members are one and the same with the Diocese. The alleged Diocese Enterprise Members are represented by separate counsel. Federal Rule of Bankruptcy Procedure 2004(b) does not give the Court the authority to direct the Diocese to produce documents of third-party entities. Fed. R. Bankr. P. 2004(b). While the Committee makes cursory allegations in the Motion regarding the alleged relatedness of the alleged Diocese Enterprise Members and the Diocese (allegations that the Diocese refutes and denies), the Committee has not sought appropriate relief to determine that the alleged Diocese Enterprise Members are one and the same with the Diocese.[5] Consequently, as of the date of this response, the alleged Diocese Enterprise Members exist as completely separate entities and thus outside the scope of the Motion, which is directed at the Diocese and only served on the Diocese. As the Committee did not separately serve the alleged Diocese Enterprise Members with the Motion, the Court should not enter an order requiring the alleged Diocese Enterprise Members to produce documents or the Diocese to produce documents

---

[5] Any such determination would require the filing of an adversary proceeding as described under Federal Rule of Bankruptcy Procedure 7001(i). No such adversary proceeding has been filed by the Committee. A motion seeking a Rule 2004 examination is an inappropriate instrument to determine whether third-party entities should be treated as part of the Diocese.

5

belonging to the alleged Diocese Enterprise Members.[6] Even disregarding these procedural issues, the Committee fails to carry its burden of showing good cause for the requested examination of the alleged Diocese Enterprise Members because the alleged Diocese Enterprise Members are separate from the Diocese. Accordingly, the Motion must be denied as to the alleged Diocese Enterprise Members.[7]

## II.  THE COMMITTEE'S REQUESTS AS TO THE DIOCESE ARE OVERLY BROAD AND UNDULY BURDENSOME.

Even if limited solely to the Diocese (and excluding alleged Diocese Enterprise Members), the Diocese also objects to the discovery requests in their current form as overly broad and unduly burdensome.[8] First, almost all of the Committee's proposed document requests include either no time limits[9], a 25-year time limit[10], or a separate time limit (such as 20 years)[11] for relevant

---

[6] To be clear, the Diocese does not object to providing information regarding the Diocese's interactions with any of the alleged Diocese Enterprise Members, such as the service agreements or any payments or property transfers between any alleged Diocese Enterprise Members and the Diocese. Instead, the Diocese specifically objects to an order requiring the Diocese to produce any information that solely relates to the alleged Diocese Enterprise Members.

[7] The Diocese's counsel spoke with counsel for certain of the parishes, Schools, and other Catholic-related entities, including VCCF and VCC. Based on those discussions, the Diocese believes that these other Catholic-related entities are willing to provide some of the requested information to the Committee on a voluntary basis. The Diocese's counsel informed the Committee Counsel that the Diocese would work to facilitate the voluntary exchange of information.

[8] The Diocese recognizes that this type of objection may be more appropriate if brought in response to the specific discovery requests. However, due to the odd nature of Rule 2004, the Diocese submits this objection to preserve its ability to object to the specific discovery requests. To allow discovery to move forward in an efficient manner, the Diocese is amenable to entry of an order approving the Motion but preserving the Diocese's rights to object to specific proposed document requests to the extent an agreement on production cannot be reached. The Diocese otherwise reserves its right to assert specific objections once the proposed document requests are officially allowed and served.

[9] *See, e.g.*, Request Nos. 6, 7, 8, 9, 10, 11, 12, 13, 20, 21, 26, 28, 41, 42, 43, 44, 47, 53, 54, 55, 73, 75, 76.

[10] *See, e.g.*, Request Nos. 1, 4, 14, 19, 23, 27, 37, 81, 82, 83.

[11] *See, e.g.*, Request Nos. 24, 25, 38.

documents. In their current form, the proposed document requests would require the Diocese to produce, and require both the Diocese and the Committee to review, documents from the entirety of the Diocese's existence. Second, certain of the document requests do not appear relevant to the Diocese's ability to pay creditors or the Diocese's assets.[12]

The Diocese remains committed to working with the Committee to provide it with all necessary information to assess amounts available to pay survivors under a negotiated plan of reorganization as described in the Motion. However, the Diocese remains concerned regarding the administrative cost of responding to all of these document requests and strongly believes that the Diocese's finite resources should instead be used to maximize the return for the survivors.

## CONCLUSION

For the foregoing reasons, the Motion must be denied as to the alleged Diocese Enterprise Members (and any information relating solely to the Diocese Enterprise Members) and should, if granted as to the Diocese, preserve the Diocese's ability to object to the specific proposed document requests when the Diocese responds to such requests.

Dated: March 18, 2025  /s/ *Samuel M. Andre*
Raymond J. Obuchowski
**OBUCHOWSKI LAW OFFICE**
1542 Route 107, PO Box 60
Bethel, VT 05032
(802) 234-6244
ray@oeblaw.com

James L. Baillie (*pro hac vice*)
Steven R. Kinsella (*pro hac vice*)
Samuel M. Andre (*pro hac vice*)
Katherine A. Nixon (*pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN  55402-4400
(612) 492-7000

---

[12] *See, e.g.*, Request Nos. 13 (annual attendance and population statistics), 14 (all policy manuals), 18 (Official Catholic Directories), 56-59 (extensive cemetery information).

7

jbaillie@fredlaw.com
skinsella@fredlaw.com
sandre@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR THE ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT**