## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF VERMONT

In re:

Roman  Catholic  Diocese  of  Burlington,
Vermont,[1]

          Debtor.

Case No.: 24-10205-HZC
Chapter 11 Case

---

### SUPPLEMENT TO MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. § 363(f) AUTHORIZING THE SALE OF THE LORETTO HOME FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS

The Roman Catholic Diocese of Burlington, Vermont (the "Diocese") files this supplement to its *Motion for Entry of an Order Under 11 U.S.C. § 363(f) Authorizing the Sale of the Loretto Home Free and Clear of All Liens, Claims, and Interests* (ECF No. 448, the "Motion").

1. The Diocese filed the Motion on August 26, 2025. (ECF No. 448.)

2. The Motion was originally set for hearing on September 30, 2025. (ECF No. 449.)

3. The hearing was continued to October 28, 2025 (ECF No. 473) and December 9, 2025 (ECF No. 520), respectively, due to the issues described below.

4. These issues have now been resolved.

### I.    REVISED LEGAL DESCRIPTION.

5. After the filing of the Motion, the Diocese discovered an issue with the legal description of the Loretto Home[2] as used in the Option Agreement and the Motion. For example,

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Diocese's address is 55 Joy Drive, South Burlington, Vermont 05403, and its Employer Identification Number (EIN) is 03-0180730.

[2] Any term not otherwise defined herein has the meaning ascribed to it in the Motion.

the Option Agreement and the Motion described an 11 7/8-acre parcel, instead of an approximately 1.33-acre parcel, and referred separately to the Loretto Home.

6.      At the time of entry into the Option Agreement and the filing of the Motion, the Diocese was still reviewing and sorting through its historical property records, which included several deeds for properties located adjacent to one another in and around Meadow Street.

7.      It was difficult to determine which deeds originally provided for the transfer of the Loretto Home to the Diocese based on the legal descriptions in each deed.

8.      Since that time, the Diocese has worked with the proposed buyer, Cornerstone, to identify the correct legal description for the Loretto Home.

9.      A corrected Option Agreement is attached hereto as **Exhibit 1** and the revised legal description is attached thereto as Exhibit A. As shown on Exhibit A to the corrected Option Agreement, the sale of the Loretto Home to Cornerstone would involve a boundary line adjustment and a right-of-way easement in favor of Cornerstone.

10.     Attached hereto as **Exhibit 2** is a visual depiction of what property will be conveyed by the Diocese to Cornerstone upon Cornerstone's exercise of the option. Cornerstone would take title to "Parcel A," through a boundary line adjustment with "Parcel B," and be granted a right-of-way easement next to "Parcel C." For the avoidance of doubt, Exhibit 2 is intended to be a helpful, visual aid only. Parties in interest should refer to Exhibit 1 for an accurate description of the property being conveyed.

11.     Upon exercise of the option, Cornerstone would receive a 1.52-acre parcel in exchange for a payment of $1,000,000 to the Diocese.

## II.     LIENS, CLAIMS, AND INTERESTS.

12.     In the Motion, the Diocese had also indicated that to the best of its knowledge, the Loretto Home is not subject to any liens, claims, or interests. The Diocese further indicated that it would continue to confirm the extent of any liens, claims, or interests on or in the Loretto Home and would supplement the Motion to the extent necessary prior to any hearing.

13.     As part of certain due diligence, Cornerstone worked with a title attorney who identified the following potential liens, claims, or interests:

**Utility Line Easements**

    a.  Utility easement from the Sisters of St. Joseph Society to Rutland Railway Light & Power Company, dated October 15, 1909, and recorded in Book 24 at Page 364 of the Rutland City Land Records;

    b.  Utility easement from the Sisters of St. Joseph Society to Rutland Railway Light & Power Company, dated August 12, 1925, and recorded in Book 49 at Page 357 of the Rutland City Land Records;

    c.  Utility easement from the Sisters of St. Joseph Society to Central Vermont Public Service Corporation, dated November 27, 1950, and recorded in Book 87 at Page 427 of the Rutland City Land Records;

    d.  Utility easement from the Sisters of St. Joseph Society to Central Vermont Public Service Corporation and New England Telephone and Telegraph Company, dated April 13, 1966, and recorded in Book 133 at Page 488 of the Rutland City Land Records;

    e.  Utility easement from the Sisters of St. Joseph Society to Central Vermont Public Service Corporation and New England Telephone and Telegraph Company, dated July 10, 1966, and recorded in Book 134 at Page 469 of the Rutland City Land Records; and

    f.  Sewer line easement from the Roman Catholic Diocese of Burlington, Inc. to the City of Rutland, dated August 25, 2004, and recorded in Book 491 at Page 872 of the Rutland City Land Records.

**Rights of Way**

g.  Subject to access rights as set forth in a Release for Flood Control Project dated April 30, 1971, and recorded in Book 156 at Page 372 of the Rutland City Land Records;

h.  Subject to an easement and right of way as set forth in the Warranty Deed of Vermont Catholic Charities, Inc. to the City of Rutland, dated July 9, 1973, and recorded in Book 168 at Page 701 of the Rutland City Land Records;

i.  Subject to easements as set forth in the Warranty Deed of Easement from the Roman Catholic Diocese of Burlington, Inc. to the City of Rutland, dated December 1, 2012, and recorded in Book 672 at Page 401 of the Rutland City Land Records;

j.  Rights of others in a 25' wide access easement benefiting the property, as shown on the BLA Plat (as defined in Exhibit A to the corrected Option Agreement).

14.  However, the majority of these liens, claims, or interests are on property that the Diocese will be retaining. And, in any event, based on conversations with Cornerstone, Cornerstone is not seeking to obtain the Loretto Home free and clear of these liens, claims, or interests.

15.  Upon information and belief, Rutland Railway Light & Power Company ceased operations in 1961 and is no longer in existence. Central Vermont Public Service Corporation merged with Green Mountain Power in 2012. Green Mountain Power was previously served with the Motion and the notices of continued hearing and will be served with a copy of this supplement.

16.  Upon information and belief, New England Telephone and Telegraph Company is now Verizon Communications Inc. ("Verizon"). Verizon will be served with copies of the Motion, this supplement, and the most recent notice of continued hearing.[3]

17.  Lastly, the City of Rutland was previously served with the Motion and the notices of continued hearing and will be served with a copy of this supplement.

---

[3] The Diocese previously served the Motion and the notices of continued hearing on "Verizon Wireless" at its P.O. Box in Albany, New York.

### III.      REVISED PROPOSED ORDER.

18.      Given the above changes and clarifications, attached hereto as **<u>Exhibit 3</u>** is a revised proposed order authorizing the Diocese to sell the Loretto Home to Cornerstone.

19.      The Diocese, in an exercise of its business judgment, believes the sale of the Loretto Home to Cornerstone is in the best interest of the bankruptcy estate because it properly monetizes the Loretto Home for the highest and best price received to date.

20.      By the Motion and this supplement, the Diocese requests an order authorizing the sale of the Loretto Home outside the ordinary course of business pursuant to 11 U.S.C. § 363(b)(1). The Diocese additionally requests that the order provide for the sale to be free and clear of liens, claims, and interests under 11 U.S.C. § 363(f), except as otherwise provided.

Dated:  November 25, 2025

/s/ *Steven R. Kinsella*
Raymond J. Obuchowski
**OBUCHOWSKI LAW OFFICE**
1542 Route 107, PO Box 60
Bethel, VT 05032
(802) 234-6244
ray@oeblaw.com

James L. Baillie (*pro hac vice*)
Steven R. Kinsella (*pro hac vice*)
Samuel M. Andre (*pro hac vice*)
Katherine A. Nixon (*pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN  55402-4400
(612) 492-7000
jbaillie@fredlaw.com
skinsella@fredlaw.com
sandre@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR THE ROMAN CATHOLIC
DIOCESE OF BURLINGTON, VERMONT**

**EXHIBIT 1**

# OPTION AGREEMENT

**THIS OPTION AGREEMENT** (this "<u>Agreement</u>") is entered into as of the 26th day of August, 2025 (the "<u>Effective Date</u>"), by and between Roman Catholic Diocese of Burlington, Vermont, a Vermont nonprofit corporation with a mailing address of 55 Joy Drive, South Burlington, VT 05403 ("<u>Grantor</u>"), and Housing Trust of Rutland County D/B/A Cornerstone Housing Partners, a Vermont not for profit corporation, with a mailing address of 27 Wales Street, Rutland, VT 05701 (together with its successors and assigns, "<u>Grantee</u>"). Grantor and Grantee may each hereinafter be referred to as a "<u>Party</u>" or together the "<u>Parties</u>."

**WHEREAS**, Grantor is the fee simple owner of certain real property and improvements thereon located at 59 Meadow Street in the City of Rutland, Vermont (the "<u>Property</u>"), as more particularly described and/or depicted on <u>Exhibit A</u> attached hereto and incorporated herein;

**WHEREAS**, Grantee is a not-for-profit affordable housing developer, and is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code;

**WHEREAS**, Grantor wishes to grant an exclusive option to Grantee, and Grantee wishes to acquire an exclusive option from Grantor, to purchase the Property, together with any and all rights and appurtenances thereto, all on the terms and subject to the conditions set forth herein; and

**WHEREAS**, On September 30, 2024, Grantor filed a case before the United States Bankruptcy Court for the District of Vermont (the "<u>Bankruptcy Court</u>"), Case No. 24-10205-HZC (the "<u>Bankruptcy Case</u>"), under chapter 11 of title 11 of the United States Code ("<u>Bankruptcy Code</u>").

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1.    <u>Purchase Option</u>. In consideration of a payment of one dollar ($1.00) made by Grantee to Grantor, Grantor hereby grants to Grantee, and Grantee hereby accepts from Grantor, an exclusive option to purchase the Property, together with all privileges, rights, easements, and appurtenances thereto, on the terms and subject to the conditions described herein (the "<u>Option</u>").

2.    <u>Term of Option</u>. The term of the Option shall commence on the Effective Date and shall expire on the one hundred twentieth (120th) day following the Effective Date (the "<u>Expiration Date</u>"). Grantee may, at its election, extend the Expiration Date for an additional one-month period by delivering to Grantor a written notice of extension prior to the then-applicable Expiration Date. If Grantee does not exercise the Option prior to the Expiration Date (as may be extended in accordance with the terms hereof), the Option and Grantee's rights hereunder shall automatically terminate, and the parties' rights and obligations under this Agreement shall cease, except any rights or obligations which expressly survive the termination of this Agreement.

3.    <u>Purchase Price</u>. Upon Grantee's timely exercise of the Option, Grantor shall be obligated to sell the Property to Grantee for a purchase price (the "<u>Purchase Price</u>") equal to one

CORRECTED COPY

million dollars ($1,000,000.00), subject to the terms and conditions set forth herein. The Purchase Price, adjusted by apportionments set forth herein, shall be paid at Closing (as defined below), by bank cashier's or certified check payable to Grantor, or by wire transfer pursuant to written instructions given by Grantor to Grantee no less than three (3) business days prior to the Closing.

4.      Bankruptcy Court Approval.   Notwithstanding anything contained herein to the contrary, the Option, the exercise of the Option, the Closing, and all other terms and conditions of this Agreement shall be contingent on and subject to approval of this Agreement by the Bankruptcy Court. Grantor shall file the appropriate pleadings with the Bankruptcy Court seeking approval of this Agreement and the transaction contemplated by this Agreement pursuant to Sections 363 and 365 of the Bankruptcy Code. If such approval is not granted by the Bankruptcy Court, this Agreement shall be null and void and Grantor and Grantee shall have no obligations under this Agreement.

5.      Exercise of Option; Closing.   At any time prior to the Expiration Date, Grantee may exercise the Option by delivery of written notice of exercise to Grantor. In the event that Grantee exercises the Option, transfer of title and delivery of possession of the Property shall occur at a closing (the "Closing"). The Closing shall be held following satisfaction or waiver of all conditions to Closing described herein, on a date reasonably agreed to by Grantor and Grantee, but not to exceed sixty (60) days following Grantee's delivery of written notice of exercise to Grantor. In connection with such Closing:

      a.      Grantor shall bear the cost of preparing the warranty deed and Vermont property transfer tax return and recording any discharges, releases, or other documents necessary to remove any liens or encumbrances on the Property.  Grantee shall pay the cost of recording the warranty deed and Vermont property transfer tax.

      b.      Real property taxes, municipal taxes, fees and assessments, or similar items shall be apportioned and prorated at the Closing between Grantor and Grantee with Grantor being responsible for such costs until the day before the Closing and Grantee being responsible for such costs on and after the day of the Closing.

      c.      Grantee shall pay any Vermont Property Transfer Tax due in connection with the sale of the Property, and Grantor shall pay any Vermont Land Gains Tax due on account of the sale of the Property. Unless Grantor provides a certificate complying with the provisions of 32 V.S.A. § 10007 or proof that the proposed transaction is exempt from Vermont Land Gains Tax, Grantee may withhold from the payment of the Purchase Price and shall pay the Vermont Department of Taxes an amount equal to ten percent (10%) of the Purchase Price.  Notwithstanding the foregoing, Grantor represents and warrants that it has owned the Property for more than six (6) years and that the Property has not been subdivided during the period of its ownership.  Based on such representation and warranty, the Parties agree that the proposed transaction is exempt from Vermont Land Gains Tax.

      d.      Grantor shall provide a certificate and affidavit complying with the provisions of 26 U.S.C. § 1445 and the regulations adopted thereunder to Grantee at the Closing.

e.     Unless Grantor provides a certificate and affidavit complying with the provisions of 32 V.S.A. § 5847, Grantee shall deduct from the Purchase Price and shall pay to the Vermont Department of Taxes, for the account of Grantor, an amount equal to two and one-half percent (2½%) of the Purchase Price as required by 32 V.S.A. § 5847. Notwithstanding the foregoing, the Parties agree that because Grantor is a Vermont corporation, the transaction is exempt from withholding under 32 V.S.A. § 5847.

6.     <u>Intentionally Omitted</u>.

7.     <u>Cooperation</u>.  From the Effective Date through the Expiration Date or, if the Option is exercised, through the day of Closing (the "<u>Closing Date</u>"), Grantor shall cooperate with efforts deemed necessary by Grantee to facilitate, or in connection with, Grantee's planning and development of the Property. Without limiting the foregoing, Grantor shall execute such documents as Grantee may reasonably request, including, but not limited to, the following:

a.     grant or loan applications;

b.     documents necessary to obtain federal, state, and local permitting; and

c.     any documents reasonably necessary to enable Grantee to obtain investigations, funds or approvals required for the purchase of the Property.

Grantor shall, upon Grantee's reasonable request, promptly execute, consent to and deliver all documents, instruments, applications, filings or materials, and take such other actions, deemed necessary or desirable to facilitate the purchase and sale of the Property and Grantee's intended uses thereof.  Notwithstanding anything to the contrary in this Section, Grantor shall not be required to incur any out-of-pocket cost or expense to comply with this Section.

8.     <u>Appraisal</u>. If the Option is exercised, Grantee's obligation to close shall remain subject to Grantee obtaining a fair market value appraisal acceptable to its funders, establishing the value at a minimum of the Purchase Price.  If this appraisal contingency is not satisfied prior to Closing, Grantee may elect to terminate this Agreement, in which case the Parties' obligations hereunder shall cease, except any rights or obligations which expressly survive the termination of this Agreement.

9.     <u>Financing</u>. If the Option is exercised, Grantee's obligation to close under this Agreement shall remain subject to a financing contingency that Grantee obtain financing for the acquisition and redevelopment of the Property from funding sources, and on terms and conditions, satisfactory to Grantee.  Grantee agrees to act diligently and in good faith to obtain such funding. If this financing contingency is not satisfied prior to Closing, Grantee may elect to terminate this Agreement, in which case the Parties' obligations hereunder shall cease, except any rights or obligations which expressly survive the termination of this Agreement.

10.   <u>Title and Permits</u>.

a.   <u>Title Review</u>. To the best of Grantor's knowledge, Grantor represents and warrants that Grantor holds good and marketable and insurable title to the Property and that the Property is in compliance with all permits and permit conditions relating to the Grantor's ownership and operation of the Property. Grantor covenants that, if the Option is exercised, Grantor shall convey to Grantee at Closing good and marketable and insurable title to the Property by warranty deed at Closing, with reference to the Vermont Marketable Title Act (27 V.S.A. sections 601, et seq.), subject to only such liens or encumbrances as are acceptable to Grantee in Grantee's sole discretion. If the title is encumbered, other than by such liens or encumbrances as are acceptable to Grantee, then Grantor shall promptly perfect or arrange to perfect the marketability of title on or before the Closing. In the event of any defect affecting marketability of title which Grantor is unable to cure on or before the Closing, Grantee may elect to extend the Closing Date to allow Grantor additional time to make title marketable or terminate this Agreement, in which case the Parties' obligations hereunder shall cease.

b.   <u>Title Insurance</u>. Grantee may, at its sole cost and expense, elect to purchase an ALTA owner's policy of title insurance. If Grantee so elects, Grantor shall take commercially reasonable efforts to furnish documents or evidence will be required by the title company in order to issue coverage satisfactory to Grantee, including affidavits and other documentation needed to delete the standard exceptions and monetary liens or encumbrances from such owner's policy.

c.   <u>Permits</u>. If the Option is exercised, Grantee's obligation to close shall remain subject to Grantee having obtained all federal, state and local permits and approvals reasonably deemed necessary by Grantee in connection with its proposed use of the Property (the "<u>Permits</u>"), with any appeal periods having expired without an appeal being filed. Grantor shall assist and cooperate with Grantee in obtaining all Permits and shall, upon reasonable request by Grantee, promptly execute, consent to and deliver all documents, instruments, applications, filings or materials in its possession and control deemed necessary or desirable to facilitate, or in connection with, Grantee's planning and development of the Property; provided that the Grantor shall not be required to incur any out-of-pocket costs or expenses in performing such obligations. Without limiting the foregoing, the term "Permits" shall include all historical reviews, determinations and approvals by the State Historic Preservation Office deemed reasonably necessary or expedient by Grantee.

11.   <u>Due Diligence</u>.

a.   <u>Investigations & Inspections Generally</u>. Throughout the Option period and, if the Option is exercised, continuing until the Closing, Grantee, through its employees, agents, and contractors, shall have the right to enter upon the Property to conduct investigations and inspections of the permitting, physical condition, and the environmental condition of the Property, and conduct such other reviews, tests, investigations and inspections of the Property as Grantee may deem advisable, at all reasonable times and

upon reasonable prior notice to Grantor (which may be electronic or written), provided that such activities shall not materially interfere with or impair Grantor's use of the Property. Upon completion of such investigations or inspections, Grantee, at its own expense, shall promptly restore the Property to substantially the same condition as it was in prior to Grantee's investigation or inspection. Grantee agrees to indemnify, defend, and hold harmless Grantor, its employees, agents, and representatives from and against any and all claims, liabilities, losses, damages, costs, or expenses (including reasonable attorneys' fees) arising out of or related to any injury or damage occurring during the Grantee's investigation or inspection of the property. This indemnification obligation shall apply to any acts or omissions by Grantee, its employees, agents, or contractors during the investigation or inspection process. This provision shall survive the termination of this Agreement.

b.  <u>Physical and Environmental Conditions</u>.  Without limiting the foregoing, throughout the Option period and, if the Option is exercised, continuing until the Closing, Grantee may, at Grantee's expense, perform any and all tests or inspections necessary to verify that the Property is free from any such hazardous waste, toxic waste, radioactive or other hazardous or potentially harmful materials. In the event that Grantee discovers that the Property contains any such substances or materials, Grantee may perform additional testing to establish the extent of the contamination, and Grantee may, at its option, at any time before Closing, terminate this Agreement, in which case the Parties' obligations hereunder shall cease, except any rights or obligations which expressly survive the termination of this Agreement. Grantee, or its employees, agents, or contractors, shall be permitted to report any such environmental contamination or hazardous materials to any governmental authorities to the extent required to do so under applicable law. Grantor shall cooperate with Grantee in Grantee's testing and inspection of conditions at the Property pursuant to this Section and shall promptly provide all available information, documents and materials reasonably requested by Grantee or Grantee's consultants reasonably needed or appropriate for Grantee's testing and investigation of conditions at the Property pursuant to this Section.

c.  <u>Unacceptable Conditions</u>.  In the event that Grantee determines, in its sole discretion, based upon its investigations and inspections of the Property, that the condition of the Property is unacceptable, Grantee shall notify Grantor in writing.  Thereafter, Grantor shall use commercially reasonable efforts to assure the removal and/or remedy of any such unacceptable conditions by Closing provided that Grantor shall not be required to spend in excess of ten thousand dollars ($10,000.00) for such removal and/or remedy. In the event Grantor is unable to remove any such unacceptable conditions by the Expiration Date or, if the Option has been exercised by the Closing, Grantee may elect to extend the Closing Date to allow Grantor additional time to remove or remedy any unacceptable conditions or terminate this Agreement, in which case the Parties' obligations hereunder shall cease, except any rights or obligations which expressly survive the termination of this Agreement.

d.  <u>Boundary Line Survey</u>. Throughout the Option period and, if the Option is exercised, continuing until the Closing, Grantee, through its employees, agents, and

contractors, shall have the right to obtain a boundary line survey of the proposed boundary lines for the Property by a Vermont-licensed surveyor, confirming the boundary lines for the Property to be conveyed hereby. Grantor shall assist and cooperate with Grantee in facilitating the survey and shall, upon reasonable request by Grantee, promptly execute, consent to and deliver all documents, instruments, applications, filings or materials deemed necessary or desirable to facilitate the survey; provided that the Grantor shall not be required to incur any out-of-pocket costs or expenses in performing such obligations.

      e.      <u>Inspection of Underground Storage Tank</u>. Throughout the Option period and, if the Option is exercised, continuing until the Closing, Grantee, through its employees, agents, and contractors, shall have the right to obtain an inspection from a qualified individual and in compliance with the Vermont Underground Storage Tank Rules, confirming to the Grantee's satisfaction that the underground storage tank at the Property remains in good condition and working order and in compliance with the Department of Environmental Conservation's requirements for underground storage tanks. Grantor shall assist and cooperate with Grantee in facilitating the inspection and shall, upon reasonable request by Grantee, promptly execute, consent to and deliver all documents, instruments, applications, filings or materials within its possession and control deemed necessary or desirable to facilitate the inspection; provided that the Grantor shall not be required to incur any out-of-pocket costs or expenses in performing such obligations.

      f.      <u>Public Safety Inspection</u>. Throughout the Option period and, if the Option is exercised, continuing until the Closing, Grantee, through its employees, agents, and contractors, shall have the right to obtain a public safety inspection from the Vermont Department of Public Safety prior to the Closing. Grantor shall assist and cooperate with Grantee in facilitating the inspection and shall, upon reasonable request by Grantee, promptly execute, consent to and deliver all documents, instruments, applications, filings or materials deemed necessary or desirable to facilitate the inspection; provided that the Grantor shall not be required to incur any out-of-pocket costs or expenses in performing such obligations.

      12.      <u>Grantor's Covenants</u>.  Grantor covenants and agrees that from the Effective Date through the Expiration Date and, if the Option is exercised continuing through the Closing Date, Grantor:

      a.      will maintain the Property in its current condition and repair, ordinary wear and tear excepted, and will comply in all material respects with all laws applicable to the Property;

      b.      shall not remove or affirmatively permit the removal of any vegetation, soil or minerals from the Property or disturb or suffer the disturbance of the existing contours and/or other natural features of the land and/or the reservoirs contained therein in any way whatsoever, except with the prior written consent of Grantee;

c.      shall not cause or affirmatively permit any dumping or depositing of any materials on the Property, including, without limitation, garbage, construction debris or solid or liquid wastes of any kind;

d.      shall not further encumber the title or cause the title to be further encumbered without the prior written consent of Grantee, and if the title is so encumbered then Grantor shall use reasonable efforts to cure any such encumbrance to Grantee's satisfaction on or before Closing;

e.      shall not enter into any agreements or extensions of agreements relating to the Property that would have a material effect on its operation after the Closing without the prior written consent of Grantee;

f.      shall maintain reasonably appropriate casualty insurance covering the Property; and

g.      shall notify Grantee of any material adverse event, circumstance, act or omission that causes any representation or warranty made by Grantor herein to be false or that causes Grantor to fail to comply with any term, provision or covenant hereof.

13.      <u>Grantor's Representations and Warranties</u>.  Grantor represents and warrants that:

a.      Grantor is a Vermont nonprofit corporation duly organized and in good standing under the laws of it state of organization and has the full power and authority to enter into, execute, deliver, and consummate the transaction contemplated by this Agreement and any instruments and agreements contemplated herein.  Grantor has taken all action required by law to authorize the execution, delivery, and consummation of the transaction contemplated hereby;

b.      To the best of Grantor's knowledge, no one with access to the Property, or any portion thereof, has stored, disposed of, released or caused the release of any hazardous waste, toxic waste, or radioactive or other harmful material on the Property or any portion thereof the removal of which is required or the maintenance of which is prohibited or penalized by any applicable Federal, state or local statutes, laws, ordinance, rules or regulations;

c.      Aside from the Bankruptcy Case, there is no suit, action, arbitration, or legal, administrative, or other proceeding or injury pending or to the best of Grantor's knowledge, threatened against the Property or any portion thereof or pending or threatened against Grantor which could affect Grantor's title to the Property or any portion thereof, affect the value of the Property, or any portion thereof, or subject an owner of the Property, or any portion thereof to liability;

d.      Grantor is currently, and at Closing shall be, the sole Party in possession of the Property. There are no actual or impending leases, liens, licenses, options, rights of first

CORRECTED COPY

refusal or other agreements or obligations, oral or written, which affect the Property or any portion thereof;

  e. To the best of Grantor's knowledge, the Property and Grantor are in compliance with all applicable laws, statutes, orders, rules, regulations, permits and requirements promulgated by governmental or other authorities relating to the Property. Grantor has not received any written notice of any sort of alleged violation of any such statute, order, rule, regulation, permit or requirement, and there exists no uncured notices which have been served by any governmental agency notifying Grantor of any violations of law, ordinance, rule or regulation which would affect the Property or any portion thereof;

  f. There are no taxes or betterment assessments other than ordinary real estate taxes pending or payable against the Property, and there are no contingencies existing under which any assessment for real estate taxes may be retroactively filed against the Property; and

  g. The Property is not located within a special flood hazard area.

Each of the above representations is material and is relied upon by Grantee. Except insofar as Grantor has advised Grantee in writing to the contrary, each of the above representations shall be deemed to have been made as of the Closing and shall survive the Closing for a period of one (1) year. At the Closing, if Grantee so requests, Grantor shall deliver to Grantee a certificate in a form satisfactory to Grantee's counsel stating that each of the above representations is true and correct as of the Closing. If any of the foregoing warranties and representations are not true, complete and correct as of Closing, Grantee may terminate this Agreement, in which case the Parties' obligations hereunder shall cease.

  14. <u>Damage or Condemnation</u>. If the Property shall be damaged or diminished from any cause (including condemnation or eminent domain proceedings), which damage Grantor shall not have repaired or replaced prior to the Closing Date (Grantor having the option, but not the obligation to perform such remedy), Grantee may terminate this Agreement, in which case the Parties' obligations hereunder shall cease, or Grantee may elect to accept the Property in its damaged or diminished condition, provided that all proceeds of insurance or condemnation awards paid or payable to Grantor by reason of such damage, destruction or condemnation, shall be paid to and made payable to and assigned to Grantee at the Closing, or the Purchase Price shall be reduced by an amount mutually agreeable to Grantor and Grantee at the Closing.

  15. <u>Execution of Agreement</u>. Each Party executing this Agreement represents and warrants that the person executing the Agreement on its behalf is duly and validly authorized to do so and that such Party has the full right and authority to enter into this Agreement and perform all of its obligations hereunder.

  16. <u>Defaults and Remedies</u>.

  a. In the event of any alleged default or perceived failure to perform any obligation under this Agreement, the non-defaulting Party shall give the alleged defaulting

CORRECTED COPY

Party written notice thereof, which notice shall include a description of the alleged default and allowance of a reasonable time within which the alleged defaulting Party shall cure the alleged default, not to exceed thirty (30) days.  If the alleged default is not fully remedied within that time, the Party having received the notice shall be deemed in "Default" of this Agreement.

  b. In the event that Grantor shall be in Default hereunder, Grantee, in addition to any rights and remedies available at law or in equity, may elect to either: (i) terminate this Agreement, or (ii) specifically enforce Grantor's obligations hereunder.

  c. In the event that Grantee shall be in Default hereunder, Grantor may elect to terminate this Agreement, in which case the Parties' obligations hereunder shall cease, except any rights or obligations which expressly survive the termination of this Agreement

 17. Attorneys' Fees.  The prevailing Party in any mediation, arbitration, or litigation undertaken in connection with any Default under this Agreement shall be entitled to be paid its reasonable costs and attorneys' fees incurred in connection therewith by the losing Party.

 18. Notices Provision.  All notices to a Party pursuant to this Agreement must be in writing and shall be sent only by United States mail (first class, certified, return receipt requested); personal delivery; electronic mail; or an overnight courier service which keeps records of delivery. For purposes of giving notice hereunder the addresses of the parties are:

| | |
|---|---|
| If to Grantee: | Mary Cohen |
| | Housing Trust of Rutland County d/b/a Cornerstone Housing Partners |
| | 27 Wales Street |
| | Rutland, VT 05701 |
| | mcohen@cornerstonehousingpartners.org |
| | |
| With a copy to: | Drew Kervick |
| | SRH Law |
| | 91 College Street |
| | Burlington, VT 05401 |
| | dkervick@srhlaw.com |
| | |
| If to Grantor: | Bishop John J. McDermott |
| | Roman Catholic Diocese of Burlington, Vermont |
| | 55 Joy Drive |
| | South Burlington, VT 05403 |
| | |
| With a copy to: | Katherine A. Nixon |
| | Fredrikson & Byron, P.A. |
| | 60 S Sixth St., Suite 1500 |
| | Minneapolis, MN 55402 |
| | knixon@fredlaw.com |

CORRECTED COPY

A Party may change its address at any time by giving written notice of such change to the other Party in the manner provided herein.

19.    Interpretation, Waiver, Severability.  Each Party has reviewed this Agreement and has been given an opportunity to obtain the assistance of counsel.  The captions of this Agreement are for convenience and reference only, and shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction or meaning of the provisions of this Agreement.  A waiver of a breach of any of the provisions of this Agreement shall not be deemed to be a waiver of any succeeding breach of the same or any other provision of this Agreement.  Any determination of invalidity or unenforceability of any particular clause or provision of this Agreement shall not affect the validity or enforceability of the remainder of this Agreement.

20.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Vermont without regard to principles of conflicts of law.

21.    Successors and Assigns.  This Agreement shall inure to the benefit of, and be binding upon the Parties and their respective heirs, successors and assigns.  This Agreement may not be assigned or otherwise transferred without the other Party's written consent, which consent shall not be unreasonably withheld, provided that Grantee shall be entitled to assign this Agreement to another legal entity that it owns or controls.

22.    Entire Agreement.  This Agreement constitutes the entire agreement between the parties and shall supersede all other agreements, whether written or oral, respecting the subject matter of this Agreement.  No addition or modification of any term or provision of this Agreement shall be effective unless set forth in writing and signed by an authorized representative of the Parties.

23.    Execution and Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.  Delivery of this signed Agreement by email or electronic signatures to this Agreement through an authenticated platform such as DocuSign shall be deemed an original.

24.    Recording.  A memorandum of this Agreement, which shall not disclose any of the financial terms hereof, but shall disclose at a minimum the existence and duration of the Agreement granted hereunder, at Grantee's discretion, may be recorded in the City of Rutland Land records, at Grantee's expense and with Grantor's cooperation.

25.    Brokers.  The parties acknowledge Pomerleau Real Estate as representing the Grantor as a broker of record, and Chris Fucci Associates, Ltd., who has entered into a Cooperating Agency Agreement with Pomerleau Real Estate, whose cost shall be paid solely by the Grantor. The parties warrant and represent to each other that they have no knowledge of any other real estate broker or agent to whom a commission may be payable as a result of this transaction or any knowledge of any other finder's fees or commissions related thereto, and each party agrees to indemnify and hold harmless the other for all claims or demands of any real estate agent or broker claiming by, through, or under such party. The indemnification provisions described herein shall survive the termination of this Agreement or the Closing.

CORRECTED COPY

26.    <u>Modification</u>.  This Agreement may not be modified except in writing signed by each Party.

[*Remainder of Page Intentionally Left Blank; Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties have executed this Option Agreement as of the date set forth above.

**GRANTOR:**
Roman Catholic Diocese of Burlington, Vermont
55 Joy Drive
South Burlington, VT 05403

By: _____
Name: The Most Reverend John Joseph McDermott
Title: Bishop of the Roman Catholic Diocese of Burlington, Vermont

STATE OF _Vermont_ )
                              ) ss.
COUNTY OF _Chittenden_ )

    Subscribed and sworn to before me by The Most Reverend John Joseph McDermott on _08/26_ , 2025.

_____
Notary Public

**GRANTEE:**
Housing Trust of Rutland County D/B/A Cornerstone Housing Partners
27 Wales Street
Rutland, VT 05701

By: _____
Name: Mary Cohen
Title: Chief Executive Officer

STATE OF _____ )
                              ) ss.
COUNTY OF _____ )

    Subscribed and sworn to before me by Mary Cohen on _____ , 2025.

_____
Notary Public

**IN WITNESS WHEREOF**, the parties have executed this Option Agreement as of the date set forth above.

**GRANTOR:**

Roman Catholic Diocese of Burlington, Vermont
55 Joy Drive
South Burlington, VT 05403


By:_____
Name: The Most Reverend John Joseph McDermott
Title: Bishop of the Roman Catholic Diocese of Burlington, Vermont


STATE OF _____           )
                             ) ss.
COUNTY OF _____            )

    Subscribed and sworn to before me by The Most Reverend John Joseph McDermott on _____, 2025.


_____
Notary Public




**GRANTEE:**

Housing Trust of Rutland County D/B/A Cornerstone Housing Partners
27 Wales Street
Rutland, VT 05701

By:_____
Name: Mary Cohen
Title: Chief Executive Officer

STATE OF Vermont            )
                            ) ss.
COUNTY OF Rutland           )

Subscribed and sworn to before me by Mary Cohen on Aug 26, 2025.


_____
Notary Public  LISC 157, 0004991
               exp 4/31/2027

<u>Exhibit A</u>

Being a tract of land containing 1.52 acres, more or less, with all improvements thereon, and consisting of "Parcel 'A' to be Conveyed to Housing Trust of Rutland County, Inc., Area = 25719 Sq. Ft. or 0.59 Acres" and "Boundary Line Adjustment Parcel, Portion of Parcel 'B' to be Conveyed to Housing Trust of Rutland County, Inc., Area = 40490 Sq. Ft. or 0.93 Acres (to be Merged with Parcel A)" as depicted on a survey plat entitled "Boundary Line Adjustment Survey Lands of: Roman Catholic Diocese of Burlington, Inc." prepared by Vermont Survey Consultants, LLC, dated November 13, 2025, and to be recorded in the Rutland City Land Records (the "BLA Plat").

The lands and premises conveyed hereby are comprised of the following:

1. All and the same lands and premises conveyed to The Roman Catholic Diocese of Burlington, Inc., by Warranty Deed of Sisters of St. Joseph Society, Inc., dated July 10, 2001, and recorded in Book 416 at Page 91 of the Rutland City Land Records.

2. All and the same lands and premises conveyed to The Roman Catholic Diocese of Burlington, Inc., by Warranty Deed of Sisters of St. Joseph Society, Inc., dated July 10, 2001, and recorded in Book 416 at Page 97 of the Rutland City Land Records.

3. A portion only of the lands and premises conveyed to The Roman Catholic Diocese of Burlington, Inc., by Warranty Deed of Vermont Catholic Charities, Inc., dated July 17, 2001, and recorded in Book 416 at Page 830 of the Rutland City Land Records.

The foregoing lots are to be merged into a single lot containing 1.52 acres, more or less.

The merged lot is more particularly described by metes and bounds as follows:

Beginning at a point located in the westerly line of Meadow Street, which point marks the southeasterly corner of a twenty-five (25) foot wide strip of land belonging to the Roman Catholic Diocese of Burlington, Inc. and the northeasterly corner of the herein described <u>Loretto Home Parcel</u> (said point of beginning is further defined as being approximately seven hundred seventy-eight (778) feet northerly along the said Meadow Street from its intersection with River Street, in the City of Rutland, County of Rutland, State of Vermont);

Thence, from the point of beginning, South 7° 14' 55" East along the said Meadow Street, a distance of one hundred eighty and seven hundredths (180.07) feet to point, which point marks a bend in the westerly limit of Meadow Street and a point in the easterly line of the herein described <u>Loretto Home Parcel</u>;

Thence, continuing along Meadow Street, South 5° 20' 20" East a distance of one hundred nineteen and fifty-eight hundredths (119.58) feet to a point, which point marks the northeasterly corner of lands of Richard G. & Sheree Bloch and the southeasterly corner of the herein described <u>Loretto Home Parcel</u>;

Thence, South 85° 14' 50" West along the northerly line of lands of Richard G. & Sheree Bloch, a distance of two hundred twenty-five and sixty-three hundredths (225.63) feet to a point in the easterly line of lands

of Mount Saint Joseph Academy, which point marks the northwesterly corner of the said lands of Bloch and the southwesterly corner of the herein described <u>Loretto Home Parcel</u>;

Thence along the easterly line of lands of Mount Saint Joseph Academy, the following two (2) courses:

(1) North 4° 45' 10" West a distance of sixty and seventy-two hundredths (60.72) feet to a point;
(2) North 4° 45' 10" West a distance of forty-five and forty-two hundredths (45.42) feet to an iron pipe (existing), which pipe marks the northeasterly corner of the said Mount Saint Joseph Academy and the southeasterly corner of other lands of the Roman Catholic Diocese of Burlington, Inc.;

Thence, North 4° 45' 10" West along other lands of the said Roman Catholic Diocese of Burlington, Inc, a distance of one hundred eighty-nine and ninety-seven hundredths (189.97) feet to a point, which point marks an in-corner of other lands of the Roman Catholic Diocese of Burlington, Inc. and the northwesterly corner of the herein described <u>Loretto Home Parcel</u>;

Thence, North 84° 21' 35" East along the southerly line of a strip of land owned by the Roman Catholic Diocese of Burlington, Inc. a distance of two hundred sixteen and sixty hundredths (216.60) feet to the point or place of beginning.

Also included in this conveyance, by quitclaim only, are all lands and premises located between the easterly line of the above-described parcel and the centerline of Meadow Street.

Also included in this conveyance is an access easement for the benefit of the lands and premises conveyed hereby, to be held in common with others, over a portion of Parcel "B" consisting of a 25' wide strip of land located immediately north of and adjacent to the above-described parcel of land, as shown on the BLA Plat.



**LINE TABLE**

| LINE | LENGTH | DIRECTION |
|------|--------|-----------|
| L1 | 225.63' | S85° 14' 50"W |
| L2 | 60.72' | N4° 45' 10"W |
| L3 | 45.42' | N4° 45' 10"W |
| L4 | 80.44' | N84° 22' 00"E |
| L5 | 10.00' | N5° 38' 00"W |
| L6 | 144.15' | N84° 22' 30"E |

**LEGEND**

- IRON PIPE/PIN (EXISTING)
- IRON PIPE/PIN (SET)
- UNMONUMENTED POINT
- PROPERTY LINE
- R.O.W. LINE
- RETAINING WALL
- PAVED SURFACE
- GRAVEL SURFACE
- UTILITY POLE

**PARCEL TABLE**

PARCEL "A" BEFORE ADJUSTMENT:
THE ROMAN CATHOLIC DIOCESE OF BURLINGTON, INC.
BK. 416 PG. 701 DATED JULY 9, 2001
BK. 416 PG. 97 DATED JULY 10, 2001
AREA = 25719 SQ. FT. OR 0.59 ACRES

PARCEL "B" BEFORE ADJUSTMENT:
THE ROMAN CATHOLIC DIOCESE OF BURLINGTON, INC.
BK. 416 PG. 830 DATED JULY 17, 2001
AREA = 4.99 ACRES

PARCEL "A" AFTER ADJUSTMENT:
AREA = 1.52 ACRES

PARCEL "B" AFTER ADJUSTMENT:
AREA = 4.06 ACRES

PROJECT LOCATION MAP
(NOT TO SCALE)

CITY OF RUTLAND
BK. 168 PG. 701 DATED JULY 9, 1973

REMAINING PORTION OF PARCEL "B"
THE ROMAN CATHOLIC DIOCESE OF BURLINGTON, INC.
BK. 416 PG. 830 DATED JULY 17, 2001
AREA = 4.06 ACRES

BOUNDARY LINE ADJUSTMENT PARCEL
PORTION OF PARCEL "B" TO BE CONVEYED TO
HOUSING TRUST OF RUTLAND COUNTY, INC.
AREA = 40490 SQ. FT. OR 0.93 ACRES
(TO BE MERGED WITH PARCEL A)

25' WIDE EASEMENT IN COMMON WITH
OTHERS TO BE CONVEYED TO HOUSING
TRUST OF RUTLAND COUNTY, INC.

25' COMMON R.O.W. OVER LANDS OF
ROMAN CATHOLIC DIOCESE

GRANGER ENTERPRISES, LTD.
BK. 339 PG. 608 DATED SEPTEMBER 8, 1994

MOUNT SAINT JOSEPH ACADEMY
BK. 357 PG. 722 DATED SEPTEMBER 18, 1996

PROPERTY LINE
L4, L5, L6 TO BE
ABANDONED

PARCEL "A" TO BE CONVEYED TO
HOUSING TRUST OF RUTLAND COUNTY, INC.
AREA = 25719 SQ. FT. OR 0.59 ACRES

NO. 61 MEADOW ST.
RICHARD G. BLOCH & SHEREE BLOCH
BK. 326 PG. 404 DATED JULY 6, 1993

ROMAN CATHOLIC DIOCESE OF
BURLINGTON, INC.

**NOTES**

1. BEARINGS AS DEPICTED ON THIS PLAT ARE WITH RESPECT TO THE VERMONT STATE PLANE COORDINATE SYSTEM (GRID NORTH) AND ARE BASED UPON GPS OBSERVATIONS.

2. ALL PROPERTY OR BOUNDARY CORNERS ESTABLISHED OR RE-ESTABLISHED BY VERMONT SURVEY CONSULTANTS, LLC HAVE BEEN MONUMENTED WITH A 5/8" x 30" LONG IRON PIN, PAINTED RED WITH A YELLOW CAP SCRIBED "VSC LLC – VT 723 NH1966".

3. REFERENCE IS MADE TO A SURVEY PLAT PREPARED BY ARONSSON & OLSON, INC ENTITLED "PROPERTY SURVEY GRANGER ENTERPRISES, LTD RIVER STREET RUTLAND, VERMONT" DATED AUGUST 10, 1993.

4. REFERENCE IS MADE TO A SURVEY PLAT PREPARED BY A.C.F PRECISION SURVEYS INC. ENTITLED "PARCELS "A" & "B" VERMONT CATHOLIC CHARITIES INC PROPERTY MEADOW STREET RUTLAND, VT" DATED JUNE 1973.

5. REFERENCE IS MADE TO A SURVEY PLAT PREPARED BY COURCELLE SURVEYING CO. ENTITLED "PORTION OF LANDS OF FIR LET TO BE CONVEYED TO CAROL GIFFORD RIVER STREET RUTLAND VERMONT" DATED NOVEMBER 11, 1993.

6. THIS SURVEY IS NOT INTENDED TO SHOW ALL RIGHT-OF-WAYS AND OR EASEMENTS EITHER EXPRESSED OR IMPLIED.

**MONUMENT SCHEDULE**

| PROPERTY CORNER | MONUMENT | GRADE RELATIONSHIP | EXISTING / SET | REMARKS |
|---|---|---|---|---|
| A | 5/8" IRON PIN | ABOVE | TO BE SET | SEE NOTE NO. 2 |
| B | 5/8" IRON PIN | ABOVE | TO BE SET | SEE NOTE NO. 2 |
| C | 5/8" IRON PIN | ABOVE | TO BE SET | SEE NOTE NO. 2 |
| D | 5/8" IRON PIN | ABOVE | TO BE SET | SEE NOTE NO. 2 |
| E | 1" IRON PIPE | BELOW 2" | EXISTING | ------- |
| F | 5/8" IRON PIN | ABOVE | TO BE SET | SEE NOTE NO. 2 |
| G | 1" IRON PIPE | ABOVE 6" | EXISTING | PAINTED YELLOW |

ADDITIONAL MONUMENTATION USED IN THIS SURVEY IS OFF LOCUS.

THIS ORIGINAL INK ON MYLAR WAS PREPARED IN ACCORDANCE WITH 27 VSA 1403

RESERVED FOR RUTLAND CITY USE ONLY

THIS SURVEY WAS PREPARED FOR AND CERTIFIED TO HOUSING TRUST OF RUTLAND COUNTY, INC.

**VERMONT SURVEY CONSULTANTS, LLC**
LAND SURVEYING · MAPPING · SUBDIVISIONS
734 U.S. ROUTE 4 UNIT 1 · RUTLAND, VERMONT 05701 (802) 772-2210

STATE OF VERMONT
RAYMOND PAGE No. 723 LICENSED LAND SURVEYOR

BOUNDARY LINE ADJUSTMENT SURVEY LANDS OF
ROMAN CATHOLIC DIOCESE OF BURLINGTON, INC.
NO. 59 MEADOW ST. "LORETTO HOME" SO-CALLED
CITY OF RUTLAND · COUNTY OF RUTLAND · VERMONT

| REV: | DESCRIPTION | BY | DATE |
|---|---|---|---|

COPYRIGHT © 2025 VERMONT SURVEY CONSULTANTS, LLC
ALL RIGHTS RESERVED. THIS DOCUMENT OR ANY PART THEREOF MAY NOT BE REPRODUCED OR UTILIZED IN ANY FORM WITHOUT PRIOR WRITTEN PERMISSION FROM VERMONT SURVEY CONSULTANTS, LLC

PROJ NO. 2025-26   DRAWN BY: RHP
SCALE: 1" = 60 FT.   DATE: NOV. 13, 2025   SHEET 1 OF 1   REV: -

NOT VALID UNTIL SEALED

SCALE IN FEET
120'   60'   0   180'
A GEOMAX 90 TOTAL STATION CLOSED TRAVERSE SURVEY

I, RAYMOND PAGE, HEREBY CERTIFY THAT THIS SURVEY IS CONSISTENT WITH INFORMATION ABSTRACTED FROM PERTINENT DEEDS, OFFICIAL RECORDS, DOCUMENTS, INFORMATION AND MARKERS EVIDENT ON THE PROPERTY.

LICENSED LAND SURVEYOR

# **EXHIBIT 2**

## Proposed Parcels



ROW to Cornerstone Housing

Existing



**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

In re:

Roman Catholic Diocese of Burlington,
Vermont,

                Debtor.

Case No.: Case No.: 24-10205-HZC
Chapter 11 Case

**ORDER UNDER 11 U.S.C. § 363(f) AUTHORIZING THE SALE OF THE LORETTO
HOME FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS**

This matter came before the Court on the *Motion for Entry of an Order Under 11 U.S.C. §
363(f) Authorizing the Sale of the Loretto Home Free and Clear of All Liens, Claims, and Interests*
(doc. # 448) and the *Supplement to Motion for Entry of an Order Under 11 U.S.C. § 363(f)
Authorizing the Sale of the Loretto Home Free and Clear of All Liens, Claims, and Interests* (doc.
# ___ ) (together, the "Motion") filed by the Roman Catholic Diocese of Burlington, Vermont (the
"Diocese"), the Affidavit of Bishop John J. McDermott (doc. # 13), and the statements of counsel
and evidence adduced with respect to the Motion at the hearing on December 9, 2025 (the
"Hearing"). The Court finds that: (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§
157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this
is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) due and proper notice of the Motion was
provided pursuant to Local Rule 9013-4; (v) notice of the Motion and the Hearing was sufficient
under the circumstances; and (vi) there is good cause to waive the 14-day stay imposed by
Bankruptcy Rule 6004(h) to the extent it is applicable. After due consideration, the Court finds
that the relief, as requested in the Motion is in the best interests of the Diocese, its estate, and its
creditors.  Therefore, for good cause shown, **IT IS HEREBY ORDERED THAT:**

1.      The Motion is **<u>GRANTED</u>** as set forth in this Order. All terms not specifically defined herein have the meaning provided in the Motion.

2.      The Diocese is authorized to perform under the corrected Option Agreement dated August 26, 2025, by and between the Diocese, on the one hand, and Housing Trust of Rutland County, Inc. D/B/A Cornerstone Housing Partners, a Vermont not for profit corporation ("<u>Cornerstone</u>"), on the other hand, which is attached to the Motion as **<u>Exhibit 1</u>**.  The terms of the corrected Option Agreement are fair and reasonable and in the best interest of the bankruptcy estate.

3.      The Diocese is authorized to sell to Cornerstone the property located at 59 Meadow Street, Rutland, Vermont 05701, commonly referred to as the "Loretto Home," and having the legal description as shown on Exhibit A to Exhibit 1 of the Motion (the "<u>Loretto Home</u>"), subject to the terms of this Order.

4.      The sale of the Loretto Home to Cornerstone shall constitute a legal, valid, binding, and effective transfer of the Loretto Home and shall vest Cornerstone with title to the Loretto Home, free and clear of all liens (as defined in 11 U.S.C. § 101(37)), claims (as defined in 11 U.S.C. § 101(5)), and other interests to the extent of 11 U.S.C. § 363(f), except the utility easements and rights of way described in the Motion.

5.      The Diocese is authorized to take all other actions and execute and deliver additional documents or instruments as necessary to effectuate the sale of the Loretto Home contemplated in the Motion and the Option Agreement.

6.      The Diocese is authorized to pay Pomerleau Real Estate a commission rate of 6% of the gross sale price ($60,000) on a final basis.

7.     The Diocese and Cornerstone have acted in good faith in connection with the Motion and proposed sale. The Diocese and Cornerstone are entitled to the protections provided in 11 U.S.C. § 363(m).

8.     The Diocese is authorized to take any and all actions necessary to implement the provisions of this Order.

9.     To the extent Bankruptcy Rule 6004(h) applies, this Order is deemed effective and immediately enforceable upon its entry.

10.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and interpretation of this Order.

Burlington, Vermont                     _____

                                        Heather Z. Cooper
                                        United States Bankruptcy Judge