**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

In re:

Roman Catholic Diocese of Burlington, Vermont,[1]

       Debtor.

Case No.: 24-10205-HZC
Chapter 11 Case

**MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. § 363(b) AUTHORIZING THE DIOCESE TO LEASE REAL PROPERTY FOR OPERATIONS**

The Roman Catholic Diocese of Burlington, Vermont (the "Diocese") requests that this Court enter an order under 11 U.S.C. § 363(b) authorizing the Diocese to lease certain real property for its operations (the "Motion"). The Court recently entered an order authorizing the Diocese to sell certain real property located at 55 Joy Drive, South Burlington, VT 05403 (the "Diocesan Office"). (ECF No. 786.) The Diocese currently uses the Diocesan Office for its administrative operations, including its financial offices, the Bishop's office, and record storage. In preparation for the sale of the Diocesan Office, the Diocese coordinated to transition its operations to three new locations under lease arrangements. Allowing the Diocese to proceed with the lease arrangements will ensure that the Diocese is able to continue operating without interruption during this Chapter 11 case.

The Diocese conferred with the Official Committee of Unsecured Creditors (the "Committee") and the Office of the United States Trustee prior to the filing of this Motion.

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Diocese's address is 55 Joy Drive, South Burlington, Vermont 05403, and its Employer Identification Number (EIN) is 03-0180730.

**JURISDICTION, VENUE, AND STATUTORY BASIS FOR RELIEF**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The petition commencing this Chapter 11 case was filed on September 30, 2024 (the "Petition Date").  The case is currently pending before this Court.

3.      This Motion arises under 11 U.S.C. § 363(b) and Bankruptcy Rule 6004. This Motion is filed under Bankruptcy Rules 6004, 9013, and 9014 and Local Rules 6004-1 and 9013-1 to -6. Notice of this Motion  is  provided  pursuant to Bankruptcy  Rule 2002 and Local Rule 9013-4.

**GENERAL BACKGROUND**

**I.      THE DIOCESE COMMENCED THIS BANKRUPTCY CASE.**

1.      On the Petition Date, the Diocese filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      The Diocese continues to operate its business as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.      There is presently no pending request or motion for appointment of a trustee or examiner.

4.      The Diocese is a Catholic diocese serving the entire State of Vermont. Further background information regarding the Diocese may be found in the *Affidavit of Bishop John J. McDermott in Support of Initial Pleadings and Pursuant to Local Rule 1007-1(i)*. (ECF No. 13.)

5.      The Office of the United States Trustee appointed the Committee on October 22, 2024. (ECF No. 52.)

2

## II.    THE COURT AUTHORIZES THE DIOCESE TO SELL THE DIOCESAN OFFICE.

6.      The Diocese is the fee simple owner of the Diocesan Office.

7.      On May 15, 2026, the Diocese filed a motion for authorization to sell the Diocesan Office to Northeast Territories LLC for $3,130,000 (ECF No. 751, the "Sale Motion").

8.      In paragraph 33 of the Sale Motion, the Diocese indicated, "In conjunction with the closing of the sale of the Diocesan Office to the Purchaser, the Diocese anticipates finding another office building to lease. The Diocese will file a separate motion seeking Court approval of any lease." (*Id.* ¶ 33.)

9.      On June 17, 2026, the Court entered an order granting the Sale Motion. (ECF No. 786.)

10.     While the final Purchase and Sale Agreement between the Diocese and Northeast Territories LLC contemplates a closing date on or before September 15, 2026 (*see* ECF No. 784, Ex. A), the Diocese and Northeast Territories LLC had originally contemplated an earlier closing date.

11.     The parties may still attempt to close earlier than September 15, 2026.

## III.    THE DIOCESE NEGOTIATES TO LEASE REAL PROPERTY FOR OPERATIONS.

12.     In anticipation for the original, earlier closing of the sale of the Diocesan Office, the Diocese negotiated to lease real property at the following locations: (a) St. Joseph Hall, 35 Lime Kiln Road, Colchester, VT 05439; (b) St. John Vianney Annex, 142 Hinesburg Road, South Burlington, VT 05403; and (c) Mater Christi School, Sisters of Mercy Convent, 102 Mansfield Avenue, Burlington, VT 05401 (the "Leased Properties").

13.     While each lease starts on July 1, 2026, the effectiveness of each lease is contingent on Court approval. Starting each lease on July 1, 2026 will allow the Diocese sufficient time to

3

fully transition operations prior to the closing of the sale of the Diocesan Office. The lease start date was also due to the Diocese's moving arrangements. The Diocese obtained an optimal rate through a moving company for the dates of July 14 and 15, 2026.

14. St. Joseph Hall, which is on the campus of St. Michael's College, will be the new operations office for the majority of the Diocese's employees. The Diocese will be leasing 3,822 square feet for $6,210.75 per month, with property taxes, insurances premiums, utilities, and internet services included. A draft copy of the proposed lease with St. Michael's College is attached hereto as **Exhibit A**. The Diocese is still coordinating execution of the lease. The Diocese will supplement this Motion prior to any hearing with an executed copy of the lease.

15. Besides St. Joseph Hall, the Diocese still needs additional space for its operations. Therefore, some employees will also be working out of the Annex at St. John Vianney Parish. The Diocese will be leasing 1,035 square feet for $1,050 per month, with property taxes, insurances premiums, and utilities included. A copy of the proposed lease with the Charitable Trust of St. John Vianney Parish is attached hereto as **Exhibit B**.

16. The Diocese also needs space for its archives. Therefore, the Diocese is leasing 828 square feet from Mater Christi School for $950.00 per month, with all utilities included. A copy of the proposed lease with Mater Christi School is attached hereto as **Exhibit C**.

17. Each lease is for a two-year term, with annual renewals thereafter.

## RELIEF REQUESTED

18. By this Motion, the Diocese requests an order authorizing the Diocese to lease the Leased Properties outside the ordinary course of business pursuant to 11 U.S.C. § 363(b)(1).

## BASIS FOR RELIEF

19. The Court has authority to grant the relief requested in this Motion pursuant to 11 U.S.C. § 363(b)(1). Section 363(b)(1) of the Bankruptcy Code provides that the debtor in

possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1); *see also Obuchowski v. United Bank & Tr. Co. (In re Treadway)*, No. 88-00003, 1989 WL 90535, at *4 (Bankr. D. Vt. July 19, 1989).

20.     Courts generally approve transactions under 11 U.S.C. § 363(b)(1) so long as the debtor can demonstrate "some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business." *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Celsius Network LLC*, 647 B.R. 631, 660 (Bankr. S.D.N.Y. 2023), *leave to appeal denied*, No. 23-CV-523 (JPO), 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023). Courts give deference to a debtor's application of its sound business judgment in the use, sale, or lease of property. *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12–13 (Bankr. D. Del. Apr. 29, 2014); *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990); *In re Canyon P'ship*, 55 B.R. at 524–25; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981).

21.     In light of the plain language of 11 U.S.C. § 363(b)(1), which only requires "notice and hearing" and does not set out factors to consider, the Second Circuit in *Lionel* observed that:

> A bankruptcy judge must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted [to the Court] under the Code. As Justice Holmes once said in a different context, "Some play must be allowed for the joints of the machine . . . ."

*In re Lionel Corp.*, 722 F.2d at 1069 (quoting *Mo., Kan. & Tex. Ry. Co. v. May*, 194 U.S. 267 (1904)); *see also In re Windstream Holdings Inc.*, 614 B.R. at 456.

22.     Here, the Diocese, in an exercise of its business judgment, believes that leasing the Leased Properties is in the best interest of the bankruptcy estate because the Diocese would be able to continue operations during this Chapter 11 case, while also monetizing the Diocesan Office as quickly as possible.

**WAIVER OF  STAY UNDER BANKRUPTCY RULE 6004**

23.     Cause exists to waive the 14-day stay as provided for in Bankruptcy Rule 6004(h).

24.     The Diocese had to negotiate leases with three different entities and to do so took considerable time. The Diocese filed this Motion as soon as it had enough detail to provide to the Committee and other parties in interest, like the Office of the United States Trustee, including signed leases.

25.      Each lease is expected to start on July 1, 2026, subject to Court approval. By the time the Motion is heard, the Diocese will have already moved and made other logistical arrangements.

26.     A 14-day stay of the order authorizing the Diocese to lease the Leased Properties would potentially require the Diocese to renegotiate each lease.

**NOTICE AND SERVICE**

27.     This Motion and all related papers were served as set forth in the certificate of service related to this Motion.

**CONCLUSION**

28.     The Diocese respectfully requests that this Court enter an order: (a) authorizing the Diocese to lease the Leased Properties; (b) waiving the 14-day stay as provided for in Bankruptcy Rule 6004(h); and (c) granting such other and further relief as the Court deems necessary and proper.

Dated: July 2, 2026

*/s/ Steven R. Kinsella*

Raymond J. Obuchowski
**OBUCHOWSKI LAW OFFICE**
1542 Route 107, PO Box 60
Bethel, VT 05032
(802) 234-6244
ray@oeblaw.com

James L. Baillie (*pro hac vice*)
Steven R. Kinsella (*pro hac vice*)
Samuel M. Andre (*pro hac vice*)
Katherine A. Nixon (*pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
jbaillie@fredlaw.com
skinsella@fredlaw.com
sandre@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR THE ROMAN CATHOLIC
DIOCESE OF BURLINGTON, VERMONT**

**EXHIBIT A**

## LEASE AGREEMENT

This Lease Agreement (this "Lease" or "Lease Agreement") is by and between **SAINT MICHAEL'S COLLEGE, INC.**, a Vermont non-profit corporation with a place of business in Colchester, Vermont ("Landlord") and **ROMAN CATHOLIC DIOCESE OF BURLINGTON VERMONT**, a Vermont non-profit corporation with a place of business in South Burlington, Vermont ("Tenant").

N O W ,  T H E R E F O R E ,

In consideration of the foregoing and the mutual covenants and agreements herein set forth, the parties hereby agree as follows:

Section 1.  **Lease of Premises; Due Diligence Contingency**.  Landlord hereby leases and rents to Tenant, and Tenant hereby takes from Landlord, the following described space (hereinafter referred to as the "Premises" or "Leased Premises"):

Being a portion of Landlord's building known as St. Joseph's Hall (the "Facility Building"), at 35 Lime Kiln Road in Colchester, Vermont (the "Landlord's Property"), consisting of approximately 3,822 square feet of finished space located in the Facility Building, as more particularly described in Exhibit A attached hereto.

The Premises also include the right to use in common with Landlord all hallways, common areas, bathrooms in the Facility Building, as well as walkways, driveways, parking lots, and walkways associated with the Premises subject to the conditions in this Lease and the requirements of all applicable laws and ordinances, and all rules and regulations established by Landlord from time to time.

The Premises are leased subject to: (i) covenants, restrictions, easements and rights-of-way of record; (ii) zoning regulations, ordinances, buildings restrictions, regulations and permits of any municipal, county, state or federal department having jurisdiction over the Premises; and (iii) the provisions of all other applicable laws, statutes, ordinances and public acts.

Section 2. **Term of Lease; Options to Renew**. The Premises are hereby leased to Tenant subject to all of the terms and conditions herein contained, for a term (the "Term") that will commence on July 1, 2026 (the "Commencement Date") and expire on the second (2nd) anniversary thereof, unless sooner terminated as set forth herein.

Tenant shall have the option to renew this Lease annually of one (1) year each (each, a "Renewal Term"), upon written notice to Landlord given not less than ninety (90) days prior to the expiration of the then-current term. Each Renewal Term shall be upon the same terms and conditions set forth herein, except as otherwise agreed in writing by the parties, including adjustments to Gross Rent as provided below

Section 3.  **Gross Rent**. Tenant agrees to pay to Landlord, in lawful money of the United States, at the address specified in Section 17, or at such other location as Landlord may hereafter designate in writing, Gross Rent for the Leased Premises for the first lease year of the Term which shall be Seventy- Four Thousand Five Hundred Twenty-Nine and 00/100 Dollars ($74,529.00) per annum or Six Thousand Two Hundred Ten and 75/100 Dollars ($6,210.75) per month during the Term. The first payment of Gross Rent shall be due and payable on or before the Commencement Date. Rent for any period of less than a full month shall be prorated.

The Gross Rent for the second (2nd) year of the Initial Term shall remain the same as the Gross Rent for the first (1st) year, with no increase.  For any Renewal Term, the Gross Rent and any other

economic terms shall be subject to review by Landlord and Tenant and may be adjusted by mutual written agreement of the parties prior to the commencement of each Renewal Term.

Gross Rent shall be paid in monthly installments, in advance, on the first (1st) day of each month. Landlord reserves the right to direct Tenant to make all Gross Rent payments by wire into Landlord's designated account, such account information to be given in writing to Tenant at least five (5) business days prior to the date that such payment is due. Gross Rent and all other sums payable under the Lease shall be paid without notice, demand, set off, or deduction, and, except as provided in this Lease or by judicial



determination, without abatement, suspension, diminution, or reduction. The obligations and liabilities of Tenant under the Lease shall in no way be released, discharged or otherwise affected (except as otherwise provided in this Lease or by judicial determination) by reason of any occurrence whatsoever. In the event any monthly installment is not paid to Landlord within ten (10) days of its due date, Tenant shall pay to Landlord a late charge of One Hundred and 00/100 Dollars ($100.00) as an agreed upon liquidated damage payment resulting from such late payment. Any forbearance by Landlord in collecting the late payment charge for an overdue monthly installment shall not constitute a waiver of any subsequent late payment charges to which Landlord is entitled hereunder. No payment by Tenant or receipt by Landlord of a lesser amount than the total rental payment as set forth herein shall be deemed to be other than a payment on account, and no endorsement or statement on any check or other communication accompanying a check for payment of any amounts payable hereunder shall be deemed an accord and satisfaction, and Landlord may accept such check as partial payment without prejudice to Landlord's right to recover the balance of any sums owed by Tenant hereunder or to pursue against Tenant any additional remedies available under this Lease or provided at law or equity.

Section 4. **Security Deposit**. Tenant shall pay Landlord a security deposit (the "Security Deposit") on or before the Commencement Date in the amount of Six Thousand Two Hundred Ten and 75/100 Dollars ($6,210.75). The Security Deposit shall be retained by Landlord in a non-interest-bearing account. Except as otherwise provided herein, Landlord shall refund the Security Deposit to Tenant within fifteen (15) days after the termination of this Lease, or following the complete evacuation of the Premises by Tenant, less any amounts reasonably required to repair or restore the Premises to the condition that existed on the Commencement Date, reasonable wear and tear excepted, or to pay or satisfy any outstanding terms or requirements of this Lease, including Tenant's obligation to pay all Gross Rent and other charges due hereunder.

Section 5. **Taxes; Insurance; Utilities and Services**. Landlord shall be responsible for payment of the real property taxes and insurance premiums for Landlord's Property. Landlord shall also pay all utility charges (including water, sewer, gas, electricity and other utility expenses), and internet services. Tenant shall be responsible for bringing trash and recycling to receptacles on the side of the Facility Building, and Landlord shall be responsible for removal of trash and recycling from such receptacles. Tenant shall provide custodial services for the Leased Premises and shall be responsible for snow removal and the salting of exterior steps, ramps and egress to and from the entrances to Landlord's Property used to access the Leased Premises. Tenant shall pay when due all taxes assessed against Tenant on account of Tenant's personal property on the Premises, and Tenant's use and occupancy of the Premises under this Lease.

Landlord shall not be responsible for the failure of water supply, gas heat, power, electric current, telephone, or otherwise service, or any damage to property, occasioned by breakage, leakage or obstruction of any pipes and or other leakage in or about the Leased Premises, unless such damage is caused by Landlord's gross negligence or willful misconduct. Notwithstanding any of the foregoing, Landlord covenants that it will cooperate with Tenant and use commercially reasonable efforts to remedy any such cessation or interruption. If cessation of utility services ("Utilities Stop") prevents Tenant from operating its business in the Premises in any material respect and if such utility services are not restored within ten (10) days of such Utilities Stop, then the Gross Rent shall abate until such services are restored. Notwithstanding the foregoing, Rent shall not abate due to a Utilities Stop caused by a general outage due to weather or other general conditions or to any Utilities Stop caused by Tenant.

Section 6. **Use of Premises**. Tenant shall use and occupy the Premises for office space, and for no other purpose without Landlord's written consent, which shall not be unreasonably withheld, conditioned or delayed.

Subject to the existing permits, Tenant shall be responsible, at Tenant's expense, to obtain any and all federal, state, and municipal permits and approvals that may be required in connection with its use, occupancy and operation of the Premises.

Tennant has a right to 9 regular and 1 handicap parking spots in residential lot. Access parking is allowed adjacent lot of Salamon hall.

Section 7.  **Maintenance, Repair and Replacement Obligations**.  Tenant shall be responsible, at its sole cost and expense, for maintaining and repairing interior portions of the Premises, as may be reasonably required to place, keep and maintain the same in good order and state of repair, including, without limitation, engaging, at Tenant's sole cost and expense, custodial services for the Premises. Landlord shall be responsible for all other repair and maintenance of Landlord's Property and Facility Building.

Section 8. **Property Insurance**. Landlord will insure, at Landlord's cost, the Facility Building and all of Landlord's personal property therein against loss by fire, in such amounts as Landlord may consider reasonable, by policies which shall include standard extended coverage endorsements. Tenant shall be responsible for maintaining any and all insurance upon Tenant's property in and upon the Premises, by policies which shall name Landlord as an additional insured, as Landlord's interests may appear, and Landlord shall not be held responsible for any damage thereto unless caused by the gross negligence or willful misconduct of Landlord, its employees, agents or contractors. Neither Tenant nor Landlord, nor their respective agents, employees or guests, shall be liable to the other for any loss or damage to the Premises or the Facility Building or any improvements therein or thereon by fire or any other cause within the scope of such fire and extended coverage insurance, it being understood that the parties shall look solely to the insurer for reimbursement for such loss or damage.

Section 9. **Liability Insurance**. Tenant, at Tenant's own cost and expense, shall maintain a  policy or policies of liability insurance insuring Landlord and Tenant against all claims or demands for personal injuries to or death of any person, and damage to or destruction or loss of property as a result of the use of the Premises.  Such policies shall cover such risks and be in such amounts as Landlord from time to time may reasonably request, but in any event in an amount not less than $2,000,000.00 for injury to or death of any one person, and not less than $2,000,000.00 for damage to or destruction or loss of property.

Landlord shall be listed as an additional insured on Tenant's policy. Tenant shall deliver to Landlord a certificate of such insurance coverage upon execution of this Lease and annually thereafter.

Section 10. **Alterations; Landlord Work**.

(a)     Except as hereinafter expressly provided, Tenant shall not make or permit to be made any alterations, additions, changes or improvements in or to the Leased Premises without first obtaining the written consent of Landlord thereto (which consent Landlord agrees not to unreasonably withhold, condition or delay, provided Tenant is in full compliance with each and every one of the material terms, covenants and conditions in this Lease Agreement and, with respect to such alterations, additions changes or improvements, has provided Landlord with such liability insurance policies and/or surety bonds as Landlord may reasonably request).

- 3 -

(b)     Before requesting Landlord's consent, Tenant shall submit to Landlord detailed plans and specifications of such proposed alterations, changes, additions, or improvements.  Landlord shall be entitled to withhold its consent to any such alterations, additions, changes or improvements, until such time as Tenant provides Landlord with reasonable evidence of the approval of such alterations, additions, changes or improvements by any and all municipal, state, federal or other governmental or other authorities, offices and departments now existing or hereafter created having jurisdiction in the Premises, which approvals Tenant shall obtain at its own cost and expense.

(c)     Landlord, its architect, agents, and employees, shall have the right to enter upon Leased Premises in a reasonable manner and at all reasonable times during the course of any such alterations, additions, changes or improvements for the purpose of inspection and of finding out whether such work conforms to the approved plans and specifications and with the agreement herein contained.

(d)     Tenant, at its own cost and expense, will cause any and all mechanics' liens and perfections of the same which may be filed against the Leased Premises to be paid and satisfied of record within thirty (30) days after Landlord shall send to Tenant written notice by registered mail of the filing of any notice thereof against the Premises or the owner, for or purporting to be for labor or materials alleged to be furnished or to be charged by or for Tenant at the Leased Premises. Alternatively, Tenant will bond such mechanics' liens within said thirty (30) day period and commence proceedings to have such liens discharged by an order of a court of competent jurisdiction as promptly as reasonably possible.

(e)     Any alterations, improvements or other work once begun must be prosecuted with reasonable diligence to completion and must be paid for by Tenant in full, free and clear of liens or encumbrances against the Leased Premises or Landlord, and must be performed in all respects in accordance with the law.

(f)     Any approval of any Tenant improvement shall be conditioned that at the expiration of the Term, Tenant remove the approved improvements (unless agreed upon in writing otherwise) and restore the Facility Building to its original condition.

Section 11. **Parties to Comply with Laws, Etc.**. Each party shall, at its own cost and expense, comply with any and all requirements imposed upon such party, and for which such party is responsible under this Lease, by present and future statutes, laws, ordinances, acts, rules, regulations, orders and requirements of every kind and nature, affecting the Premises or Tenant's use and occupancy thereof.  Each party will further at all times during the term of this Lease, at such party's own cost and expense, indemnify and save harmless the other against and from and shall pay in full upon demand by the indemnified party any and each loss incurred, or penalty, claim or damage suffered, imposed, made or recovered by reason of the failure or neglect of the other party or its agents, contractors, employees or representatives to observe and comply with such laws, ordinances, rules, regulations and requirements.

Section 12. **Indemnifications**. Tenant shall indemnify and save harmless Landlord from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of every kind and nature, including Landlord's costs and reasonable attorneys' fees, suffered or incurred as a result of any breach by Tenant, its agents, servants, employees, visitors or licensees of any covenant or condition of this Lease, or as a result of Tenant's use or occupancy of the Leased Premises, or the negligence or willful misconduct of Tenant, its agents, servants, employees, visitors or licensees; provided, however, that it is understood and agreed that the obligations of Tenant hereunder shall not extend to the gross negligence or willful misconduct of Landlord, its employees, agents or

- 4 -

representatives. Tenant's obligations under this Section 12 shall survive the termination of this Lease, by expiration of the Term or otherwise.

Landlord shall indemnify and save harmless Tenant from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of every kind and nature, including Tenant's costs and reasonable attorneys' fees, suffered or incurred as a result of any breach by Landlord, its agents, servants, employees, visitors or licensees of any covenant or condition of this Lease, or as a result of Landlord's fulfillment of its obligations under this Lease, or the carelessness, negligence or improper conduct of Landlord, its agents, servants, employees, visitors or licensees; provided, however, that it is understood and agreed that the obligations of Landlord hereunder shall not extend to the gross negligence or willful misconduct of Tenant, its employees, agents or representatives. Landlord's obligations under this Section 12 shall survive the termination of this Lease, by expiration of the Term or otherwise.

Section 13. **Events of Default, Remedies, Damages**.

(a)     Each of the following shall constitute an "Event of Default":

(i)     Tenant shall fail to pay when and as due any Gross Rent or other charges due and payable under this Lease Agreement, and such default shall continue for a period of five (5) days after written notice of such default from Landlord to Tenant;

(ii)    Tenant shall fail to perform or comply with any of the agreements, terms, covenants or conditions in this Lease Agreement, other than those referred to in Subsection 13 (a)(i), for a period of thirty (30) days after notice from Landlord to Tenant specifying the items in default, or in the case of a default or contingency which cannot with due diligence be cured within said thirty (30) day period, Tenant shall fail to commence within said thirty (30) day period the steps necessary to cure the same and thereafter to prosecute the curing of such default with due diligence (it being understood that the time of Tenant within which to cure shall be extended for such period as may be necessary to complete the same with all due diligence); or

(iii)   Intentionally Deleted.

(b)     For so long as an Event of Default shall exist and be continuing, Landlord may give written notice to Tenant specifying the Event of Default and stating that Tenant's rights to the possession, use and occupancy of the Premises under this Lease Agreement shall expire and terminate on the date specified in such notice, which date shall be at least ten (10) days after the giving of notice, and upon the date so specified, all rights of Tenant under this Lease Agreement shall so expire and terminate.

(c)     Upon termination of Tenant's rights to possession, use and occupancy of the Premises under the Lease Agreement in accordance with the provisions of Section 13(b), above, Landlord shall by prompt written notice to Tenant elect to receive from Tenant the damages specified in Section 13(a).

(i)     Tenant shall pay Landlord an amount equal to: (x) any Gross Rent and any damages to the Premises which shall have been due or sustained prior to such termination, all reasonable costs, fees and expenses (including, but not limited to, reasonable attorneys' fees) incurred by Landlord in pursuit of its remedies

hereunder or in thereafter renting the Premises to others from time to time (which costs may include preparing the Premises for re-letting and of re-letting the Premises, but not fit up expenses for the new Tenant); plus (y) an amount equal to the Gross Rent which, but for such termination would have become due during the remainder of the term as then constituted, less the amount of Gross Rent, if any, which Landlord shall receive during such period from others to whom the Premises may be rented (other than any Additional Rent received by Landlord as a result of any failure of such other person to perform any of its obligations to Landlord). Any payments due under clause (x) of this Subsection 13(c)(i) shall be immediately due and payable. Payments due under clause (y) of this Subsection 13(c)(i) shall be due and payable in monthly installments, in advance, on the first day of each calendar month following termination of this Lease and continuing until the date on which the term would have expired but for such termination, provided, however, that in the event Tenant fails to pay such installments as and when due then the entire amount of such installments shall become immediately due and payable in full, discounted to present value, at the option of Landlord. Nothing in this paragraph shall be construed to limit or eliminate Landlord's common law duty to mitigate its damages.

Upon any termination of this Lease Agreement, Tenant shall immediately vacate the Premises and surrender the same to Landlord in the same condition as received, reasonable wear and tear and damage by fire or other casualty excepted. In the event Tenant fails to so vacate and surrender the Premises, Tenant shall pay all costs reasonably incurred by Landlord in requiring Tenant to vacate, including reasonable attorneys' fees and disbursements and, further, will pay Landlord a daily occupancy charge equal to one hundred fifty percent (150%) of the average daily rental payable by Tenant during the most recent Lease Agreement year until Tenant vacates the Premises as provided in the terms of this Lease Agreement.  Tenant expressly agrees that, for so long as any Event of Default shall exist and be continuing, Landlord shall have the right to immediately regain possession of the Premises and to exclude Tenant from further use, occupancy and enjoyment thereof, and Tenant waives any and all claims which it may have against Landlord, regardless of when the same arise, on account of such regaining of possession by Landlord or such exclusion. Upon the termination of this Lease Agreement, Tenant will remove all goods and effects not the property of Landlord, at Tenant's expense. Any damage thereby caused to the Premises shall be promptly repaired by Tenant, at Tenant's expense. At Landlord's option, any goods and effects not so removed shall be deemed abandoned by Tenant and thereupon shall become the sole property of Landlord. In the event Tenant shall fail or refuse to vacate the Premises without breach of the peace after termination, Landlord may obtain a court order  for  the  payment of rent into court in accordance with the  terms of 12 V.S.A. § 4853(a). Landlord shall also have all other rights and remedies as may be available under applicable law at the time of the occurrence of the Event of Default.

If Landlord shall fail to perform or comply with any of the agreements, terms, covenants or conditions in this Lease Agreement for a period of thirty (30) days after notice from Tenant to Landlord specifying the items in default, or in the case of a default or contingency which cannot with due diligence be cured within such thirty (30) day period, Landlord shall fail to commence within said thirty (30) day period the steps necessary to cure the same and thereafter to prosecute the curing of such default with due diligence (it being understood that the time of Landlord within which to cure shall be extended for such period as may be necessary to complete the same with due diligence), then such failure shall constitute a "Landlord's Event of Default". Upon the occurrence of a Landlord's Event of Default, Tenant shall have the right to terminate this Lease and shall have all other rights and remedies as may be available under applicable law at the time of the occurrence of Landlord's Event of Default.

Section 14. **Environmental Covenants**.

(a) Tenant shall not release or discharge any hazardous substances or other toxic materials in or about the demised Premises, or dump, flush or introduce any hazardous substances or other toxic materials into the septic, sewage or other waste disposal system serving the Premises. Tenant shall at all times comply with all applicable environmental protection, sanitary and safety laws, and rules, regulations and other governmental statutes or procedures governing same, including without limitation, the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C sec. 6901 et. seq.), the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq., as amended ("CERCLA"), and the Vermont Waste Management Statutes, Vt. Stat. Ann. Title 10, Ch. 159. The foregoing shall constitute a continuing covenant which shall survive the expiration or termination of this Lease.

(b) Tenant shall unconditionally, absolutely and irrevocably agree to indemnify, defend and hold harmless Landlord and its officers, employees, agents, and contractors, from and against and to pay in full on demand by Landlord all loss, cost and expense (including, without limitation, attorneys' fees and disbursements and fees of other professionals advising Landlord) of whatever nature suffered or incurred by Landlord on account of the existence on the Leased Premises, or the release or discharge from the Leased Premises, of hazardous substances caused by Tenant or its employees, agents, licensees and subcontractors after the Commencement Date, including, without limitation, any claims, costs, losses, liabilities and expenses arising from the violation (or claimed violation) of any environmental laws or the institution of any action by any party against Tenant, Landlord or the Leased Premises based upon nuisance, negligence or other tort theory alleging liability due to the improper generation, storage, disposal, removal, transportation or treatment of hazardous substances by Tenant or its employees, agents, licensees and subcontractors, or the imposition of a lien on any part of the Leased Premises under the CERCLA, and the Vermont Waste Management Statutes, Vt. Stat. Ann. Title 10, Ch. 159, or any other laws pursuant to which a lien or liability may be imposed on Landlord due to the existence of hazardous substances by Tenant or its employees, agents, licensees and subcontractors. The above indemnification shall not be extinguished or diminished by Tenant's notice to Landlord of the generation, storage, disposal, removal, transportation or treatment of hazardous substances by Tenant or its employees, agents, licensees and subcontractors on the Premises, nor by Landlord's consent thereto or Landlord's co-applicant status on any permit applied for in connection therewith.

Section 15. Lease Not to be Recorded. If this Lease shall be recorded by or on behalf of Tenant, except at the express request of Landlord, at the option of Landlord, it thereupon shall be and become null, void, and of no further force or effect, and rights of Tenant hereunder shall cease; provided, however, that the parties expressly agree to execute a short-form notice of lease complying with the terms of 27 V.S.A. § 341(c), which may be recorded by either Landlord or Tenant.

Section 16. **Quiet Enjoyment**. Landlord covenants that Tenant, on paying all Gross Rent required to be paid by Tenant, and observing and performing all covenants and undertakings by Tenant to

be performed hereunder, shall and may peaceably have and enjoy said Premises for the Term aforesaid in accordance with the terms of this Lease.

Section 17. **Notices**.    All notices, requests, demands, claims  and  other communications (a "Notice") hereunder shall be in writing, addressed to the intended recipient as set forth below:

| | |
|---|---|
| If to Landlord: | Saint Michael's College, Inc.<br>Attn: Robert Robinson<br>One Winooski Park<br>Colchester, VT 05439<br><br>E-mail:  rrobinson@smcvt.edu |
| with a copy (not constituting Notice) to: | Jeffrey O. Polubinski, Esq.<br>Gravel & Shea PC<br>P.O. Box 369<br>Burlington, VT 05402-0369<br>Telephone No.: (802) 658-0220<br>E-mail:  jpolubinski@gravelshea.com |
| If to Tenant: | Roman Catholic Diocese of Burlington Vermont<br>Attn: _____<br>_____<br>_____<br>E-mail: _____ |
| with a copy (not constituting Notice) to: | _____<br>_____<br>_____<br>E-mail: _____ |

or to such other person, address or number as the party entitled to such Notice shall have specified by notice to the other party given in accordance with the provisions of this Section.  Any such Notice shall be deemed duly given on the earliest of: (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by reputable overnight courier services (charges prepaid); (iii) one (1) business day after being sent to the recipient by facsimile transmission or electronic mail; or (iv) four (4) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid.

Section 18. **Disclaimer for Security**. Tenant acknowledges that the Premises including the Facility Building are not independently furnished with a security system. The Knight Card access system (the "Knight Card System") does provide card access to the Premises. Tenant, with Landlord's consent (which shall not be unreasonably withheld), at its own cost and expense, install a security system and or security measures for the protection of the Premises and Tenant's personal property stored therein. Landlord shall not be held liable for any loss or damage, including loss or damage to Tenant's personal property, fixtures, or fit-up by reason of failure to provide adequate security or ineffectiveness of security measures undertaken. Tenant acknowledges that Landlord is not an insurer and Tenant assumes all risk of loss to its personal property, fixtures and fit-up from any deficiency in the Premises' security system, and

- 8 -

further acknowledges that neither Landlord nor its agents have made any representation or warranty, nor has Tenant relied upon any representation or warranty, express or implied, including any warranty of merchantability or fitness for any particular purpose relative to any security measures recommended or undertaken. Tenant shall be responsible for any damage to the Knight Card System caused by Tenant or its employees, licensees, invitees or agents. Such damage shall be paid to Landlord within thirty (30) days of the damage as Additional Rent.

Section 19. **No Waiver**. The waiver by a party of a breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition, or of any subsequent breach of the same or any other term, covenant or condition. No covenant, term or condition of this Lease Agreement shall be deemed to have been waived or modified by a party, unless such waiver or modification is in writing and executed on behalf of the party against whom such waiver or modification is to be enforced.

Section 20. **Landlord's Right to Access**. Landlord or Landlord's agent shall have the right to enter the Premises in a reasonable manner and at all reasonable times, upon twenty-four (24) hours' prior notice, to examine the same, and to show them to prospective purchasers, mortgagees, or, during the last six (6) months of the Term, lessees. Such entry shall be done in a manner reasonably calculated to avoid any disruption or interruption of Tenant's business. If Tenant shall not be personally present to permit any entry into said Premises at any time, when for any reason an entry therein by Landlord shall by the terms of this Lease Agreement be expressly permissible, following the notice required above, Landlord or Landlord's agents may forcibly enter the same, without rendering Landlord or such agents liable therefore (if during such entry Landlord or Landlord's agents shall accord reasonable care to Tenant's property and shall repair any damage caused by such entry), and without in any manner affecting the obligations and covenants of this Lease. Nothing herein contained, however, shall be deemed or construed to impose upon Landlord any obligations, responsibility or liability whatsoever, for the care, supervision or repair, of the Leased Premises or a part thereof, other than as herein expressly provided.

Section 21. **Priority of Mortgages**. This Lease Agreement shall automatically and without further act or deed be and remain subject and subordinate to any existing mortgage and any mortgage or mortgages that may hereafter be placed against the Leased Premises, and to all renewals, modifications, consolidations, replacements, and extensions thereof, provided that any such subordination shall be conditioned upon the execution and delivery of non-disturbance agreements in a form reasonably acceptable to Tenant. Tenant will execute estoppel certificates and Subordination and Non-Disturbance Agreements in such reasonable form as may be requested in connection with such mortgages.

Section 22. **Assignment; Subletting**. This Lease shall not be assigned, nor the Premises sublet, without prior written consent from Landlord.

Section 23. **Delinquent Rent and Additional Rent; Holding Over**. If Tenant shall fail to pay any Gross Rent or any other charges within three (3) days of the date when the same is due and payable hereunder, the unpaid amount shall bear interest from the due date thereof to the date of payment at the rate of one and one-half percent (1 ½%) per month, provided, however, that if such rate is higher than the maximum rate of interest allowed under applicable law, the interest payable hereunder shall be the maximum rate allowed. Any holding over after the expiration of the term hereof shall be construed to be a tenancy from day to day only, at the rate of one hundred fifty percent (150%) of the Gross Rent in effect immediately prior to such expiration (prorated on a daily basis) and otherwise on the terms and conditions herein specified so far as applicable.

Section 24. **Termination**. On the termination date of the Term, Tenant shall: (a) immediately vacate the Premises and surrender the same to Landlord; (b) repair all damage to the Premises and the

fixtures and personal property of Landlord located on the Premises caused by Tenant's removal of its furniture and trade fixtures; and (c) at the option of Tenant either:  (i) abandon all permitted improvements, alterations and modifications made by Tenant to the Premises prior to the date of termination, in which event such permitted improvements, alterations and modifications shall be and become, without further action on the part of Tenant, the property of Landlord free and clear of all claims by Tenant and any person claiming by, through or under Tenant; or (ii) remove said permitted improvements, alterations and modifications and restore the Premises to the same condition which existed on the Commencement Date, reasonable wear and tear excepted.

Upon termination of this Lease for any of the reasons permitted herein (including, without limitation, expiration of the term), all rights, obligations and liabilities of either party accruing under this Lease shall terminate, except for those rights, obligations, and liabilities which accrued prior to the date of termination. The parties' indemnification obligations shall survive the termination or expiration of this Lease Agreement.

Section 25. **Damage or Destruction**. If the Premises are damaged by fire or by any other cause, the following provisions shall apply:

(a)     If the damage is to such extent that the cost of restoration, as reasonably estimated by Landlord, will equal or exceed $100,000.00, Landlord may, no later than sixty (60) days following the damage, give Tenant a notice stating that Landlord elects to terminate this Lease Agreement. If such notice shall be given: (i) this Lease Agreement shall terminate on the third (3rd) day after the giving of said notice; (ii) Tenant shall surrender possession of the Premises within a reasonable time thereafter; and (iii) all rent (including Gross Rent) shall be apportioned as of the date of such surrender and any rent paid for any period beyond said date shall be repaid to Tenant.

(b)     If the cost of restoration, as reasonably estimated by Landlord, shall amount to less than $100,000.00, or if despite the cost Landlord does not give notice to Tenant of its election to terminate in accordance with Section 24, above, Landlord shall restore the Premises with reasonable promptness, subject to delays beyond Landlord's control, and Tenant shall not have the right to terminate this Lease Agreement on account of such damage (unless such restoration cannot be completed within ninety (90) days of the date of casualty, in which event Tenant will have the right to terminate this Lease Agreement forthwith, by written notice to Landlord).

Landlord need not restore fixtures, improvements or other property of Tenant.

In any case in which the use of the Premises is affected by any such damage, there shall be either an abatement or a reduction in Gross Rent during the period for which the Premises are not reasonably usable for the purposes for which they are leased hereunder, the amount of such abatement or reduction to fairly and appropriately reflect the degree to which Tenant is thereby prevented from using the Premises for such purposes. The words "restoration" and "restore" as used in this Section shall include repairs.

Section 26.  **Landlord not Personally Liable**.  If Landlord or any successor in interest of Landlord is a mortgagee, or an individual, joint venture, tenancy in common, corporation, limited liability company, firm or partnership, general or limited, it is specifically understood and agreed that, in the absence of a person's gross negligence or willful misconduct, there shall be absolutely no personal liability on the part of such mortgagee or such individual or on the part of the members of such corporation, limited liability company, firm, partnership or joint venture with respect to any of the terms, covenants and conditions of this Lease, and that Tenant shall look solely to the equity of Landlord or such successor in interest in the

Premises for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord or by Landlord's successor of any of the terms, covenants and conditions of this Lease to be performed by Landlord, such exculpation of personal liability to be absolute and without any exception whatsoever.

Section 27. **Broker Commissions**. The parties hereto warrant and represent to each other that they have no knowledge of any real estate broker or agent to whom a commission may be payable as a result of this transaction or any such knowledge of any other finder's fees or commissions related thereto. Each party agrees to indemnify and hold harmless the other for all claims or demands of any real estate agent or broker claiming by, through or under such party other than as described herein. This indemnification shall also include payment of costs and attorneys' fees incurred by a party in defense of a claim for such real estate commissions or fees.

Section 28. **Signs**. Tenant may not install or display any sign, logo or advertising medium on any existing free-standing sign or the outside of the Premises or the underlying Landlord's Property without Landlord's prior consent to the sign, display or advertising medium.

Section 29. **Authorization and Binding Effect of Agreement**. The execution, delivery and performance of this Lease and each other document or instrument required to be delivered pursuant hereto by Landlord and Tenant have been duly authorized by their respective Boards of Directors or Managers or Members as the case may be, and this Lease and each other document or instrument required to be delivered pursuant hereto is the legal, valid and binding obligation of Landlord and Tenant and is enforceable against Landlord and Tenant in accordance with its respective terms; subject, as to enforcement only, to bankruptcy, insolvency, reorganization, moratorium or similar laws at the time in effect affecting the enforceability of the rights of creditors generally.

Section 30. **Successors and Assigns**. All the terms and conditions of this Lease shall be binding upon and shall inure to the benefit of the parties and the successors and permitted assigns of the parties hereto. The term "Landlord" means only the owner of the Leased Premises for the time, and upon any transfer of fee simple title to the Leased Premises, the transferor shall automatically be relieved of all obligations under this Lease accruing after the transfer of title, and the transferee shall automatically be and become responsible for all obligations of Landlord hereunder.

Section 31. **Waiver of Rule of Construction**. The parties waive the benefit of any rule that this Lease is to be construed strictly against one party or the other.

Section 32. **Entire Agreement, Applicable Law**. This Lease with any exhibits and riders attached hereto contains the entire agreement of the parties with respect to the lease of the Premises and no representations, inducements, promises or agreements not embodied herein shall be of any force or effect, unless the same are in writing and signed by or on behalf of the party to be charged. The captions of particular sections are inserted as a matter of convenience only and are in no way to affect or define the scope or intent of this Lease or any provision thereof. This Lease shall be governed by and interpreted in accordance with the laws of the State of Vermont.

Section 33. **No Option**. A submission of this Lease for examination does not constitute a reservation of or option for the Premises and this Lease becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant.

Section 34. **Bankruptcy Court Approval.** Notwithstanding any other provision of this Lease Agreement, this Lease Agreement and the Tenant's obligations herein shall be contingent on Tenant's receipt of an order from the United States Bankruptcy Court for the District of Vermont in Case 24-10205 authorizing the Tenant to enter into this Lease Agreement and perform hereunder. If such order is not received by Tenant, this Lease Agreement shall be null and void and Tenant shall have no obligations under this Lease Agreement.

*[Signature Page Follows]*



IN WITNESS WHEREOF, the parties, as evidenced by the signatures of their Duly Authorized Agents, do hereby execute this Lease Agreement as of the dates set forth below.

LANDLORD:

SAINT MICHAEL'S COLLEGE, INC.

By: _____

_____

Date                              Duly Authorized Agent

TENANT:

ROMAN CATHOLIC DIOCESE OF BURLINGTON VERMONT

By: _____

_____

Date                              Duly Authorized Agent

[Signature Page to Lease Agreement by and between Saint Michael's College, Inc. and Roman Catholic Diocese of Burlington Vermont]

**Exhibit A**

**DEPICTION OF THE PREMISES**

All SMC Tenants are expected to comply with established standards of community living, including maintaining adequate standards of room and apartment cleanliness to avoid interference with the general comfort, safety, security, health or welfare of the campus Tenants and staff of Saint Michael's College. Any personal safety or welfare issues should be brought to the attention of management; any Tenant causing another Tenant to feel unsafe in his or her apartment may be subject to termination.

1. **Prohibited Uses.** At all times during the lease term, Tenant is not permitted to:
   a. bring onto the Property any firearms, weapons, explosives and illegal drugs of any kind anywhere within the leased premises as well as within the public areas, and parking areas. Discharge of firearms or the display of firearms that may threaten or alarm others is strictly prohibited.
   b. use gas, charcoal, open flame grills, on any balcony, deck or patio or within 25 feet of the building in which Tenant resides.
   c. engage in any criminal activity in the leased premises or on the St.

      Michael's College Campus.

   d. create loud noise or engage in disruptive behavior that can be heard outside of the leased premises or in neighboring rooms or apartments.
   e. place trash outside of the leased premised, including on balconies, decks or patios.
   f. tamper with smoke detectors, sprinklers or fire alarms.
   g. injure the reputation of the College, its Tenants or Tenant's neighbors.
   Tenant's failure to abide by the forgoing rules of conduct shall be cause for termination of the Lease.

2. **Cleanliness and Safety.** Tenant agrees to maintain the leased premises in a clean, safe and sanitary condition at all times. Tenant will place all trash and recyclables in the provided receptacles and will ensure that trash is brought out to such receptacles on the prescribed pick-up days each week. Landlord, its agents or employees reserve the right to enter any apartment or room to perform routine maintenance, inspections or showings provided that Landlord provides Tenant with at least 24 hours of advance written notice of its intention to enter the premises. In cases of emergency or when there is cause to believe that a situation exists that could cause danger to life, safety, health or property, Landlord reserves the right to enter the premises without prior notice.

3. **Smoking**. Smoking, vaping, or burning candles in any apartment hallway, elevator, stairwell, balcony, patio or adjacent area is prohibited. In the event that Tenant or Tenant's guests engage in such conduct, Landlord reserves the right to impose a cleaning fee on Tenant that may include the cost for the removal and replacement of carpeting and the cleaning of ductwork to remove all odors from the premises.

4. **Locks, Keys, Keycards**. Each Tenant will be given one apartment or room key and one parking sticker, if applicable. All keys, fobs and stickers must be returned to the management office upon vacating the premises. If Tenant is locked out of the premises, management will unlock the door upon presentation of a photo ID at no charge if the lock-out occurs during regular office hours. Tenant will incur a fee if management is required to attend to a lock-out after hours. Replacement of a lost key, fob or knight card will incur a fee of $40 if replacement is necessary. Any key, fob or sticker not returned to the

management office after the premises are vacated will be charged to Tenant at the same rate as if the items were lost.



**EXHIBIT B**

## LEASE AGREEMENT

This Lease Agreement (this "Lease" or "Lease Agreement") is by and between **CHARITABLE TRUST OF ST. JOHN VIANNEY PARISH**, a Vermont non-profit corporation with a place of business in Burlington, Vermont ("Landlord") and **ROMAN CATHOLIC DIOCESE OF BURLINGTON VERMONT**, a Vermont non-profit corporation with a place of business in South Burlington, Vermont ("Tenant").

NOW, THEREFORE,

In consideration of the foregoing and the mutual covenants and agreements herein set forth, the parties hereby agree as follows:

Section 1. **Lease of Premises; Due Diligence Contingency**. Landlord hereby leases and rents to Tenant, and Tenant hereby takes from Landlord, the following described space (hereinafter referred to as the "Premises" or "Leased Premises"):

Being a portion of Landlord's building known as St. John Vianney Annex (the "Facility Building"), at 142 Hinesburg Road in South Burlington, Vermont (the "Landlord's Property"), consisting of approximately 1,035 square feet of finished space located in the Facility Building,

The Premises also include the right to use in common with Landlord all hallways, common areas, bathrooms in the Facility Building, as well as walkways, driveways, parking lots, and walkways associated with the Premises subject to the conditions in this Lease and the requirements of all applicable laws and ordinances, and all rules and regulations established by Landlord from time to time.

The Premises are leased subject to: (i) covenants, restrictions, easements and rights-of-way of record; (ii) zoning regulations, ordinances, buildings restrictions, regulations and permits of any municipal, county, state or federal department having jurisdiction over the Premises; and (iii) the provisions of all other applicable laws, statutes, ordinances and public acts.

Section 2. **Term of Lease; Options to Renew**. The Premises are hereby leased to Tenant subject to all of the terms and conditions herein contained, for a term (the "Term") that will commence on July 1, 2026 (the "Commencement Date") and expire on the second (2nd) anniversary thereof, unless sooner terminated as set forth herein.

Tenant shall have the option to renew this Lease annually of one (1) year each (each, a "Renewal Term"), upon written notice to Landlord given not less than ninety (90) days prior to the expiration of the then-current term. Each Renewal Term shall be upon the same terms and conditions set forth herein, except as otherwise agreed in writing by the parties, including adjustments to Gross Rent as provided below

Section 3. **Gross Rent**. Tenant agrees to pay to Landlord, in lawful money of the United States, at the address specified in Section 17, or at such other location as Landlord may hereafter designate in writing, Gross Rent for the Leased Premises for the first lease year of the Term which shall be Twelve Thousand six hundred and 00/100 Dollars ($12,600.00) per annum or One Thousand Fifty and 00/100 Dollars ($1,050.00) per month during the Term. The first payment of Gross Rent shall be due and payable on or before the Commencement Date. Rent for any period of less than a full month shall be prorated.

The Gross Rent for the second (2nd) year of the Initial Term shall remain the same as the Gross Rent for the first (1st) year, with no increase. For any Renewal Term, the Gross Rent and any other economic terms shall be subject to review by Landlord and Tenant and may be adjusted by mutual written agreement of the parties prior to the commencement of each Renewal Term.

Gross Rent shall be paid in monthly installments, in advance, on the first (1st) day of each month. Landlord reserves the right to direct Tenant to make all Gross Rent payments by wire into Landlord's designated account, such account information to be given in writing to Tenant at least five (5) business days prior to the date that such payment is due. Gross Rent and all other sums payable under the Lease shall be paid without notice, demand, set off, or deduction, and, except as provided in this Lease or by judicial determination, without abatement, suspension, diminution, or reduction. The obligations and liabilities of Tenant under the Lease shall in no way be released, discharged or otherwise affected (except as otherwise provided in this Lease or by judicial determination) by reason of any occurrence whatsoever. In the event any monthly installment is not paid to Landlord within ten (10) days of its due date, Tenant shall pay to Landlord a late charge of One Hundred and 00/100 Dollars ($100.00) as an agreed upon liquidated damage payment resulting from such late payment. Any forbearance by Landlord in collecting the late payment charge for an overdue monthly installment shall not constitute a waiver of any subsequent late payment charges to which Landlord is entitled hereunder. No payment by Tenant or receipt by Landlord of a lesser amount than the total rental payment as set forth herein shall be deemed to be other than a payment on account, and no endorsement or statement on any check or other communication accompanying a check for payment of any amounts payable hereunder shall be deemed an accord and satisfaction, and Landlord may accept such check as partial payment without prejudice to Landlord's right to recover the balance of any sums owed by Tenant hereunder or to pursue against Tenant any additional remedies available under this Lease or provided at law or equity.

Section 4. **Security Deposit**. Tenant shall pay Landlord a security deposit (the "Security Deposit") on or before the Commencement Date in the amount of One Thousand Fifty and 00/100 Dollars ($1,050.00). The Security Deposit shall be retained by Landlord in a non-interest-bearing account. Except as otherwise provided herein, Landlord shall refund the Security Deposit to Tenant within fifteen (15) days after the termination of this Lease, or following the complete evacuation of the Premises by Tenant, less any amounts reasonably required to repair or restore the Premises to the condition that existed on the Commencement Date, reasonable wear and tear excepted, or to pay or satisfy any outstanding terms or requirements of this Lease, including Tenant's obligation to pay all Gross Rent and other charges due hereunder.

Section 5. **Insurance; Utilities and Services**. Landlord shall be responsible for payment of insurance premiums for Landlord's Property. Landlord shall also pay all utility charges (including water, sewer, gas, electricity and other utility expenses). Tenant shall be responsible for bringing trash and recycling to receptacles on the east side of the St. John Vianney Parish Center, and Landlord shall be responsible for removal of trash and recycling from such receptacles. Tenant shall provide custodial services for the Leased Premises. Landlord shall be responsible for snow removal and the salting of exterior steps, ramps and egress to and from the entrances to Landlord's Property used to access the Leased Premises

Landlord shall not be responsible for the failure of water supply, gas heat, power, electric current, telephone, or otherwise service, or any damage to property, occasioned by breakage, leakage or obstruction of any pipes and or other leakage in or about the Leased Premises, unless such damage is caused by Landlord's gross negligence or willful misconduct. Notwithstanding any of the foregoing, Landlord covenants that it will cooperate with Tenant and use commercially reasonable efforts to remedy any such cessation or interruption. If cessation of utility services ("Utilities Stop") prevents Tenant from operating its business in the Premises in any material respect and if such utility services are not restored within ten (10) days of such Utilities Stop, then the Gross Rent shall abate until such services are restored. Notwithstanding the foregoing, Rent shall not abate due to a Utilities Stop caused by a general outage due to weather or other general conditions or to any Utilities Stop caused by Tenant.

Section 6. **Use of Premises**. Tenant shall use and occupy the Premises for office space, and for no other purpose without Landlord's written consent, which shall not be unreasonably withheld, conditioned

- 2 -

or delayed.

Subject to the existing permits, Tenant shall be responsible, at Tenant's expense, to obtain any and all federal, state, and municipal permits and approvals that may be required in connection with its use, occupancy and operation of the Premises.

Tenant has a right to seven parking spots in Parish lot. Access parking is allowed.

Section 7. **Maintenance, Repair and Replacement Obligations**. Tenant shall be responsible, at its sole cost and expense, for maintaining and repairing interior portions of the Premises, as may be reasonably required to place, keep and maintain the same in good order and state of repair, including, without limitation, engaging, at Tenant's sole cost and expense, custodial services for the Premises. Landlord shall be responsible for all other repair and maintenance of Landlord's Property and Facility Building.

Section 8. **Property Insurance**. Landlord will insure, at Landlord's cost, the Facility Building and all of Landlord's personal property therein against loss by fire, in such amounts as Landlord may consider reasonable, by policies which shall include standard extended coverage endorsements. Tenant shall be responsible for maintaining any and all insurance upon Tenant's property in and upon the Premises, by policies which shall name Landlord as an additional insured, as Landlord's interests may appear, and Landlord shall not be held responsible for any damage thereto unless caused by the gross negligence or willful misconduct of Landlord, its employees, agents or contractors. Neither Tenant nor Landlord, nor their respective agents, employees or guests, shall be liable to the other for any loss or damage to the Premises or the Facility Building or any improvements therein or thereon by fire or any other cause within the scope of such fire and extended coverage insurance, it being understood that the parties shall look solely to the insurer for reimbursement for such loss or damage.

Section 9. **Liability Insurance**. Tenant, at Tenant's own cost and expense, shall maintain a policy or policies of liability insurance insuring Landlord and Tenant against all claims or demands for personal injuries to or death of any person, and damage to or destruction or loss of property as a result of the use of the Premises. Such policies shall cover such risks and be in such amounts as Landlord from time to time may reasonably request, but in any event in an amount not less than $2,000,000.00 for injury to or death of any one person, and not less than $2,000,000.00 for damage to or destruction or loss of property.

Landlord shall be listed as an additional insured on Tenant's policy. Tenant shall deliver to Landlord a certificate of such insurance coverage upon execution of this Lease and annually thereafter.

Section 10. **Alterations; Landlord Work**.

(a)     Except as hereinafter expressly provided, Tenant shall not make or permit to be made any alterations, additions, changes or improvements in or to the Leased Premises without first obtaining the written consent of Landlord thereto (which consent Landlord agrees not to unreasonably withhold, condition or delay, provided Tenant is in full compliance with each and every one of the material terms, covenants and conditions in this Lease Agreement and, with respect to such alterations, additions changes or improvements, has provided Landlord with such liability insurance policies and/or surety bonds as Landlord may reasonably request).

(b)  Before requesting Landlord's consent, Tenant shall submit to Landlord detailed plans and specifications of such proposed alterations, changes, additions, or improvements. Landlord shall be entitled to withhold its consent to any such alterations, additions, changes or improvements, until such time as Tenant provides Landlord with reasonable evidence of the approval of such alterations, additions, changes or improvements by any and all municipal, state, federal or other governmental or other authorities, offices and departments now existing or hereafter created having jurisdiction in the Premises, which approvals Tenant shall obtain at its own cost and expense.

(c)  Landlord, its architect, agents, and employees, shall have the right to enter upon Leased Premises in a reasonable manner and at all reasonable times during the course of any such alterations, additions, changes or improvements for the purpose of inspection and of finding out whether such work conforms to the approved plans and specifications and with the agreement herein contained.

(d)  Tenant, at its own cost and expense, will cause any and all mechanics' liens and perfections of the same which may be filed against the Leased Premises to be paid and satisfied of record within thirty (30) days after Landlord shall send to Tenant written notice by registered mail of the filing of any notice thereof against the Premises or the owner, for or purporting to be for labor or materials alleged to be furnished or to be charged by or for Tenant at the Leased Premises. Alternatively, Tenant will bond such mechanics' liens within said thirty (30) day period and commence proceedings to have such liens discharged by an order of a court of competent jurisdiction as promptly as reasonably possible.

(e)  Any alterations, improvements or other work once begun must be prosecuted with reasonable diligence to completion and must be paid for by Tenant in full, free and clear of liens or encumbrances against the Leased Premises or Landlord, and must be performed in all respects in accordance with the law.

(f)  Any approval of any Tenant improvement shall be conditioned that at the expiration of the Term, Tenant remove the approved improvements (unless agreed upon in writing otherwise) and restore the Facility Building to its original condition.

Section 11. **Parties to Comply with Laws, Etc.**. Each party shall, at its own cost and expense, comply with any and all requirements imposed upon such party, and for which such party is responsible under this Lease, by present and future statutes, laws, ordinances, acts, rules, regulations, orders and requirements of every kind and nature, affecting the Premises or Tenant's use and occupancy thereof. Each party will further at all times during the term of this Lease, at such party's own cost and expense, indemnify and save harmless the other against and from and shall pay in full upon demand by the indemnified party any and each loss incurred, or penalty, claim or damage suffered, imposed, made or recovered by reason of the failure or neglect of the other party or its agents, contractors, employees or representatives to observe and comply with such laws, ordinances, rules, regulations and requirements.

Section 12. **Indemnifications**. Tenant shall indemnify and save harmless Landlord from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of every kind and nature, including Landlord's costs and reasonable attorneys' fees, suffered or incurred as a result of any breach by Tenant, its agents, servants, employees, visitors or licensees of any covenant or condition of this Lease, or as a result of Tenant's use or occupancy of the Leased Premises, or the negligence or willful misconduct of Tenant, its agents, servants, employees, visitors or licensees; provided, however, that it is understood and agreed that the obligations of Tenant hereunder shall not extend to the gross negligence or willful misconduct of Landlord, its employees, agents or

- 4 -

representatives. Tenant's obligations under this Section 12 shall survive the termination of this Lease, by expiration of the Term or otherwise.

Landlord shall indemnify and save harmless Tenant from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of every kind and nature, including Tenant's costs and reasonable attorneys' fees, suffered or incurred as a result of any breach by Landlord, its agents, servants, employees, visitors or licensees of any covenant or condition of this Lease, or as a result of Landlord's fulfillment of its obligations under this Lease, or the carelessness, negligence or improper conduct of Landlord, its agents, servants, employees, visitors or licensees; provided, however, that it is understood and agreed that the obligations of Landlord hereunder shall not extend to the gross negligence or willful misconduct of Tenant, its employees, agents or representatives. Landlord's obligations under this Section 12 shall survive the termination of this Lease, by expiration of the Term or otherwise.

Section 13. **Events of Default, Remedies, Damages**.

(a)      Each of the following shall constitute an "Event of Default":

(i)      Tenant shall fail to pay when and as due any Gross Rent or other charges due and payable under this Lease Agreement, and such default shall continue for a period of five (5) days after written notice of such default from Landlord to Tenant;

(ii)      Tenant shall fail to perform or comply with any of the agreements, terms, covenants or conditions in this Lease Agreement, other than those referred to in Subsection 13 (a)(i), for a period of thirty (30) days after notice from Landlord to Tenant specifying the items in default, or in the case of a default or contingency which cannot with due diligence be cured within said thirty (30) day period, Tenant shall fail to commence within said thirty (30) day period the steps necessary to cure the same and thereafter to prosecute the curing of such default with due diligence (it being understood that the time of Tenant within which to cure shall be extended for such period as may be necessary to complete the same with all due diligence); or

(b)      For so long as an Event of Default shall exist and be continuing, Landlord may give written notice to Tenant specifying the Event of Default and stating that Tenant's rights to the possession, use and occupancy of the Premises under this Lease Agreement shall expire and terminate on the date specified in such notice, which date shall be at least ten (10) days after the giving of notice, and upon the date so specified, all rights of Tenant under this Lease Agreement shall so expire and terminate.

(c)      Upon termination of Tenant's rights to possession, use and occupancy of the Premises under the Lease Agreement in accordance with the provisions of Section 13(b), above, Landlord shall by prompt written notice to Tenant elect to receive from Tenant the damages specified in Section 13(a).

(i)      Tenant shall pay Landlord an amount equal to: any Gross Rent and any damages to the Premises which shall have been due or sustained prior to such termination, all reasonable costs, fees and expenses (including, but not limited to, reasonable attorneys' fees) incurred by Landlord in pursuit of its remedies

- 5 -

hereunder or in thereafter renting the Premises to others from time to time (which costs may include preparing the Premises for re-letting and of re-letting the Premises, but not fit up expenses for the new Tenant); plus (y) an amount equal to the Gross Rent which, but for such termination would have become due during the remainder of the term as then constituted, less the amount of Gross Rent, if any, which Landlord shall receive during such period from others to whom the Premises may be rented (other than any Additional Rent received by Landlord as a result of any failure of such other person to perform any of its obligations to Landlord). Any payments due under clause (x) of this Subsection 13(c)(i) shall be immediately due and payable. Payments due under clause (y) of this Subsection 13(c)(i) shall be due and payable in monthly installments, in advance, on the first day of each calendar month following termination of this Lease and continuing until the date on which the term would have expired but for such termination, provided, however, that in the event Tenant fails to pay such installments as and when due then the entire amount of such installments shall become immediately due and payable in full, discounted to present value, at the option of Landlord. Nothing in this paragraph shall be construed to limit or eliminate Landlord's common law duty to mitigate its damages.

Upon any termination of this Lease Agreement, Tenant shall immediately vacate the Premises and surrender the same to Landlord in the same condition as received, reasonable wear and tear and damage by fire or other casualty excepted. In the event Tenant fails to so vacate and surrender the Premises, Tenant shall pay all costs reasonably incurred by Landlord in requiring Tenant to vacate, including reasonable attorneys' fees and disbursements and, further, will pay Landlord a daily occupancy charge equal to one hundred fifty percent (150%) of the average daily rental payable by Tenant during the most recent Lease Agreement year until Tenant vacates the Premises as provided in the terms of this Lease Agreement. Tenant expressly agrees that, for so long as any Event of Default shall exist and be continuing, Landlord shall have the right to immediately regain possession of the Premises and to exclude Tenant from further use, occupancy and enjoyment thereof, and Tenant waives any and all claims which it may have against Landlord, regardless of when the same arise, on account of such regaining of possession by Landlord or such exclusion. Upon the termination of this Lease Agreement, Tenant will remove all goods and effects not the property of Landlord, at Tenant's expense. Any damage thereby caused to the Premises shall be promptly repaired by Tenant, at Tenant's expense. At Landlord's option, any goods and effects not so removed shall be deemed abandoned by Tenant and thereupon shall become the sole property of Landlord. In the event Tenant shall fail or refuse to vacate the Premises without breach of the peace after termination, Landlord may obtain a court order for the payment of rent into court in accordance with the terms of 12 V.S.A. § 4853(a). Landlord shall also have all other rights and remedies as may be available under applicable law at the time of the occurrence of the Event of Default.

If Landlord shall fail to perform or comply with any of the agreements, terms, covenants or conditions in this Lease Agreement for a period of thirty (30) days after notice from Tenant to Landlord specifying the items in default, or in the case of a default or contingency which cannot with due diligence be cured within such thirty (30) day period, Landlord shall fail to commence within said thirty (30) day period the steps necessary to cure the same and thereafter to prosecute the curing of such default with due diligence (it being understood that the time of Landlord within which to cure shall be extended for such period as may be necessary to complete the same with due diligence), then such failure shall constitute a "Landlord's Event of Default". Upon the occurrence of a Landlord's Event of Default, Tenant shall have the right to terminate this Lease and shall have all other rights and remedies as may be available under applicable law at the time of the occurrence of Landlord's Event of Default.

- 6 -

Section 14. **Environmental Covenants**.

(a)    Tenant shall not release or discharge any hazardous substances or other toxic materials in or about the demised Premises, or dump, flush or introduce any hazardous substances or other toxic materials into the septic, sewage or other waste disposal system serving the Premises. Tenant shall at all times comply with all applicable environmental protection, sanitary and safety laws, and rules, regulations and other governmental statutes or procedures governing same, including without limitation, the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C sec. 6901 et. seq.), the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq., as amended ("CERCLA"), and the Vermont Waste Management Statutes, Vt. Stat. Ann. Title 10, Ch. 159. The foregoing shall constitute a continuing covenant which shall survive the expiration or termination of this Lease.

(b)    Tenant shall unconditionally, absolutely and irrevocably agree to indemnify, defend and hold harmless Landlord and its officers, employees, agents, and contractors, from and against and to pay in full on demand by Landlord all loss, cost and expense (including, without limitation, attorneys' fees and disbursements and fees of other professionals advising Landlord) of whatever nature suffered or incurred by Landlord on account of the existence on the Leased Premises, or the release or discharge from the Leased Premises, of hazardous substances caused by Tenant or its employees, agents, licensees and subcontractors after the Commencement Date, including, without limitation, any claims, costs, losses, liabilities and expenses arising from the violation (or claimed violation) of any environmental laws or the institution of any action by any party against Tenant, Landlord or the Leased Premises based upon nuisance, negligence or other tort theory alleging liability due to the improper generation, storage, disposal, removal, transportation or treatment of hazardous substances by Tenant or its employees, agents, licensees and subcontractors, or the imposition of a lien on any part of the Leased Premises under the CERCLA, and the Vermont Waste Management Statutes, Vt. Stat. Ann. Title 10, Ch. 159, or any other laws pursuant to which a lien or liability may be imposed on Landlord due to the existence of hazardous substances by Tenant or its employees, agents, licensees and subcontractors. The above indemnification shall not be extinguished or diminished by Tenant's notice to Landlord of the generation, storage, disposal, removal, transportation or treatment of hazardous substances by Tenant or its employees, agents, licensees and subcontractors on the Premises, nor by Landlord's consent thereto or Landlord's co-applicant status on any permit applied for in connection therewith.

Section 15. Lease Not to be Recorded. If this Lease shall be recorded by or on behalf of Tenant, except at the express request of Landlord, at the option of Landlord, it thereupon shall be and become null, void, and of no further force or effect, and rights of Tenant hereunder shall cease; provided, however, that the parties expressly agree to execute a short-form notice of lease complying with the terms of 27 V.S.A. § 341(c), which may be recorded by either Landlord or Tenant.

Section 16. **Quiet Enjoyment**. Landlord covenants that Tenant, on paying all Gross Rent required to be paid by Tenant, and observing and performing all covenants and undertakings by Tenant to

be performed hereunder, shall and may peaceably have and enjoy said Premises for the Term aforesaid in accordance with the terms of this Lease.

Section 17. **Notices**.    All notices, requests, demands, claims  and  other communications (a "Notice") hereunder shall be in writing, addressed to the intended recipient as set forth below:

If to Landlord:  St. John Vianney Parish
Attn: Rev. Timothy Naples
160 Hinesburg Road
South Burlington, VT
05403

E-mail:  sjvianneysbvt@vermontcatholic.org

If to Tenant:  Roman Catholic Diocese of Burlington Vermont
Attn:  Lorei Dawson
P. O Box 2367
South Burlington, VT 05407
E-mail:  ldawson@vermontcatholic.org

or to such other person, address or number as the party entitled to such Notice shall have specified by notice to the other party given in accordance with the provisions of this Section.  Any such Notice shall be deemed duly given on the earliest of: (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by reputable overnight courier services (charges prepaid); (iii) one (1) business day after being sent to the recipient by facsimile transmission or electronic mail; or (iv) four (4) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid.

Section 18. **Disclaimer for Security**. Tenant acknowledges that the Premises including the Facility Building are not independently furnished with a security system. Tenant, with Landlord's consent (which shall not be unreasonably withheld), at its own cost and expense, install a security system and or security measures for the protection of the Premises and Tenant's personal property stored therein. Landlord shall not be held liable for any loss or damage, including loss or damage to Tenant's personal property, fixtures, or fit-up by reason of failure to provide adequate security or ineffectiveness of security measures undertaken. Tenant acknowledges that Landlord is not an insurer and Tenant assumes all risk of loss to its personal property, fixtures and fit-up from any deficiency in the Premises' security system, and

further acknowledges that neither Landlord nor its agents have made any representation or warranty, nor has Tenant relied upon any representation or warranty, express or implied, including any warranty of merchantability or fitness for any particular purpose relative to any security measures recommended or undertaken.

Section 19. **No Waiver**. The waiver by a party of a breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition, or of any subsequent breach of the same or any other term, covenant or condition. No covenant, term or condition of this Lease Agreement shall be deemed to have been waived or modified by a party, unless such waiver or modification is in writing and executed on behalf of the party against whom such waiver or modification is to be enforced.

Section 20. **Landlord's Right to Access**. Landlord or Landlord's agent shall have the right to enter the Premises in a reasonable manner and at all reasonable times, upon twenty-four (24) hours' prior notice, to examine the same, and to show them to prospective purchasers, mortgagees, or, during the last six (6) months of the Term, lessees. Such entry shall be done in a manner reasonably calculated to avoid any disruption or interruption of Tenant's business. If Tenant shall not be personally present to permit any entry into said Premises at any time, when for any reason an entry therein by Landlord shall by the terms of this Lease Agreement be expressly permissible, following the notice required above, Landlord or Landlord's agents may forcibly enter the same, without rendering Landlord or such agents liable therefore (if during such entry Landlord or Landlord's agents shall accord reasonable care to Tenant's property and shall repair any damage caused by such entry), and without in any manner affecting the obligations and covenants of this Lease. Nothing herein contained, however, shall be deemed or construed to impose upon Landlord any obligations, responsibility or liability whatsoever, for the care, supervision or repair, of the Leased Premises or a part thereof, other than as herein expressly provided.

Section 21. **Priority of Mortgages**. This Lease Agreement shall automatically and without further act or deed be and remain subject and subordinate to any existing mortgage and any mortgage or mortgages that may hereafter be placed against the Leased Premises, and to all renewals, modifications, consolidations, replacements, and extensions thereof, provided that any such subordination shall be conditioned upon the execution and delivery of non-disturbance agreements in a form reasonably acceptable to Tenant. Tenant will execute estoppel certificates and Subordination and Non-Disturbance Agreements in such reasonable form as may be requested in connection with such mortgages.

Section 22. **Assignment; Subletting**. This Lease shall not be assigned, nor the Premises sublet, without prior written consent from Landlord.

Section 23. **Delinquent Rent and Additional Rent; Holding Over**. If Tenant shall fail to pay any Gross Rent or any other charges within three (3) days of the date when the same is due and payable hereunder, the unpaid amount shall bear interest from the due date thereof to the date of payment at the rate of one and one-half percent (1 ½%) per month, provided, however, that if such rate is higher than the maximum rate of interest allowed under applicable law, the interest payable hereunder shall be the maximum rate allowed. Any holding over after the expiration of the term hereof shall be construed to be a tenancy from day to day only, at the rate of one hundred fifty percent (150%) of the Gross Rent in effect immediately prior to such expiration (prorated on a daily basis) and otherwise on the terms and conditions herein specified so far as applicable.

Section 24. **Termination**. On the termination date of the Term, Tenant shall: (a) immediately vacate the Premises and surrender the same to Landlord; (b) repair all damage to the Premises and the

fixtures and personal property of Landlord located on the Premises caused by Tenant's removal of its furniture and trade fixtures; and (c) at the option of Tenant either: (i) abandon all permitted improvements, alterations and modifications made by Tenant to the Premises prior to the date of termination, in which event such permitted improvements, alterations and modifications shall be and become, without further action on the part of Tenant, the property of Landlord free and clear of all claims by Tenant and any person claiming by, through or under Tenant; or (ii) remove said permitted improvements, alterations and modifications and restore the Premises to the same condition which existed on the Commencement Date, reasonable wear and tear excepted.

Upon termination of this Lease for any of the reasons permitted herein (including, without limitation, expiration of the term), all rights, obligations and liabilities of either party accruing under this Lease shall terminate, except for those rights, obligations, and liabilities which accrued prior to the date of termination. The parties' indemnification obligations shall survive the termination or expiration of this Lease Agreement.

Section 25. **Damage or Destruction**. If the Premises are damaged by fire or by any other cause, the following provisions shall apply:

(a) If the damage is to such extent that the cost of restoration, as reasonably estimated by Landlord, will equal or exceed $100,000.00, Landlord may, no later than sixty (60) days following the damage, give Tenant a notice stating that Landlord elects to terminate this Lease Agreement. If such notice shall be given: (i) this Lease Agreement shall terminate on the third (3rd) day after the giving of said notice; (ii) Tenant shall surrender possession of the Premises within a reasonable time thereafter; and (iii) all rent (including Gross Rent) shall be apportioned as of the date of such surrender and any rent paid for any period beyond said date shall be repaid to Tenant.

(b) If the cost of restoration, as reasonably estimated by Landlord, shall amount to less than $100,000.00, or if despite the cost Landlord does not give notice to Tenant of its election to terminate in accordance with Section 24, above, Landlord shall restore the Premises with reasonable promptness, subject to delays beyond Landlord's control, and Tenant shall not have the right to terminate this Lease Agreement on account of such damage (unless such restoration cannot be completed within ninety (90) days of the date of casualty, in which event Tenant will have the right to terminate this Lease Agreement forthwith, by written notice to Landlord).

Landlord need not restore fixtures, improvements or other property of Tenant.

In any case in which the use of the Premises is affected by any such damage, there shall be either an abatement or a reduction in Gross Rent during the period for which the Premises are not reasonably usable for the purposes for which they are leased hereunder, the amount of such abatement or reduction to fairly and appropriately reflect the degree to which Tenant is thereby prevented from using the Premises for such purposes. The words "restoration" and "restore" as used in this Section shall include repairs.

Section 26. **Landlord not Personally Liable**. If Landlord or any successor in interest of Landlord is a mortgagee, or an individual, joint venture, tenancy in common, corporation, limited liability company, firm or partnership, general or limited, it is specifically understood and agreed that, in the absence of a person's gross negligence or willful misconduct, there shall be absolutely no personal liability on the part of such mortgagee or such individual or on the part of the members of such corporation, limited liability company, firm, partnership or joint venture with respect to any of the terms, covenants and conditions of this Lease, and that Tenant shall look solely to the equity of Landlord or such successor in interest in the

Premises for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord or by Landlord's successor of any of the terms, covenants and conditions of this Lease to be performed by Landlord, such exculpation of personal liability to be absolute and without any exception whatsoever.

Section 27. **Broker Commissions**. The parties hereto warrant and represent to each other that they have no knowledge of any real estate broker or agent to whom a commission may be payable as a result of this transaction or any such knowledge of any other finder's fees or commissions related thereto. Each party agrees to indemnify and hold harmless the other for all claims or demands of any real estate agent or broker claiming by, through or under such party other than as described herein. This indemnification shall also include payment of costs and attorneys' fees incurred by a party in defense of a claim for such real estate commissions or fees.

Section 28. **Signs**. Tenant may not install or display any sign, logo or advertising medium on any existing free-standing sign or the outside of the Premises or the underlying Landlord's Property without Landlord's prior consent to the sign, display or advertising medium.

Section 29. **Authorization and Binding Effect of Agreement**. The execution, delivery and performance of this Lease and each other document or instrument required to be delivered pursuant hereto by Landlord and Tenant have been duly authorized by their respective Boards of Directors or Managers or Members as the case may be, and this Lease and each other document or instrument required to be delivered pursuant hereto is the legal, valid and binding obligation of Landlord and Tenant and is enforceable against Landlord and Tenant in accordance with its respective terms; subject, as to enforcement only, to bankruptcy, insolvency, reorganization, moratorium or similar laws at the time in effect affecting the enforceability of the rights of creditors generally.

Section 30. **Successors and Assigns**. All the terms and conditions of this Lease shall be binding upon and shall inure to the benefit of the parties and the successors and permitted assigns of the parties hereto. The term "Landlord" means only the owner of the Leased Premises for the time, and upon any transfer of fee simple title to the Leased Premises, the transferor shall automatically be relieved of all obligations under this Lease accruing after the transfer of title, and the transferee shall automatically be and become responsible for all obligations of Landlord hereunder.

Section 31. **Waiver of Rule of Construction**. The parties waive the benefit of any rule that this Lease is to be construed strictly against one party or the other.

Section 32. **Entire Agreement, Applicable Law**. This Lease with any exhibits and riders attached hereto contains the entire agreement of the parties with respect to the lease of the Premises and no representations, inducements, promises or agreements not embodied herein shall be of any force or effect, unless the same are in writing and signed by or on behalf of the party to be charged. The captions of particular sections are inserted as a matter of convenience only and are in no way to affect or define the scope or intent of this Lease or any provision thereof. This Lease shall be governed by and interpreted in accordance with the laws of the State of Vermont.

Section 33. **No Option**. A submission of this Lease for examination does not constitute a reservation of or option for the Premises and this Lease becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant.

Section 34. **Bankruptcy Court Approval.** Notwithstanding any other provision of this Lease Agreement, this Lease Agreement and the Tenant's obligations herein shall be contingent on Tenant's receipt of an order from the United States Bankruptcy Court for the District of Vermont in Case 24-10205 authorizing the Tenant to enter into this Lease Agreement and perform hereunder. If such order is not received by Tenant, this Lease Agreement shall be null and void and Tenant shall have no obligations under this Lease Agreement.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties, as evidenced by the signatures of their Duly Authorized Agents, do hereby execute this Lease Agreement as of the dates set forth below.

LANDLORD:

CHARITABLE TRUST OF ST. JOHN VIANNEY PARISH

_7/1/2026_

Date

By: _Rev. Timothy Naples_
        Duly Authorized Agent

TENANT:

ROMAN    CATHOLIC    DIOCESE    OF BURLINGTON VERMONT

_7/1/26_

Date

By: _Rorel J. Dawson_, CFO
        Duly Authorized Agent

[Signature Page to Lease Agreement by and between Charitable Trust of St. John Vianney Parish and Diocese of Burlington Vermont]

**EXHIBIT C**

## LEASE AGREEMENT

This Lease Agreement (this "Lease" or "Lease Agreement") is by and between **MATER CHRISTI SCHOOL**, a Vermont non-profit corporation with a place of business in Burlington, Vermont ("Landlord") and **ROMAN CATHOLIC DIOCESE OF BURLINGTON VERMONT**, a Vermont non-profit corporation with a place of business in South Burlington, Vermont ("Tenant").

NOW, THEREFORE,

In consideration of the foregoing and the mutual covenants and agreements herein set forth, the parties hereby agree as follows:

Section 1.  **Lease of Premises; Due Diligence Contingency**. Landlord hereby leases and rents to Tenant, and Tenant hereby takes from Landlord, the following described space (hereinafter referred to as the "Premises" or "Leased Premises"):

Being a portion of Landlord's building known as Sisters of Mercy Convent (the "Facility Building"), at 102 Mansfield Avenue in Burlington, Vermont (the "Landlord's Property"), consisting of approximately 828 square feet of finished space located in the Facility Building,

The Premises also include the right to use in common with Landlord all hallways, common areas, bathrooms in the Facility Building, as well as walkways, driveways, parking lots, and walkways associated with the Premises subject to the conditions in this Lease and the requirements of all applicable laws and ordinances, and all rules and regulations established by Landlord from time to time.

The Premises are leased subject to: (i) covenants, restrictions, easements and rights-of-way of record; (ii) zoning regulations, ordinances, buildings restrictions, regulations and permits of any municipal, county, state or federal department having jurisdiction over the Premises; and (iii) the provisions of all other applicable laws, statutes, ordinances and public acts.

As the facility is part of an education campus, Tenant must also comply with and participate in safety drills to fulfill state requirements.

Section 2. **Term of Lease; Options to Renew**. The Premises are hereby leased to Tenant subject to all of the terms and conditions herein contained, for a term (the "Term") that will commence on July 1, 2026 (the "Commencement Date") and expire on the second ($2_{nd}$) anniversary thereof, unless sooner terminated as set forth herein.

Tenant shall have the option to renew this Lease annually of one (1) year each (each, a "Renewal Term"), upon written notice to Landlord given not less than ninety (90) days prior to the expiration of the then-current term. Each Renewal Term shall be upon the same terms and conditions set forth herein, except as otherwise agreed in writing by the parties, including adjustments to Gross Rent as provided below

Section 3. **Gross Rent**. Tenant agrees to pay to Landlord, in lawful money of the United States, at the address specified in Section 17, or at such other location as Landlord may hereafter designate in writing, Gross Rent for the Leased Premises for the first lease year of the Term which shall be Eleven Thousand four hundred and 00/100 Dollars ($11,400.00) per annum or Nine Hundred Fifty and 00/100 Dollars ($950.00) per month during the Term. The first payment of Gross Rent shall be due and payable on or before the Commencement Date. Rent for any period of less than a full month shall be prorated.

The Gross Rent for the second (2nd) year of the Initial Term shall remain the same as the Gross Rent for the first (1st) year, with no increase. For any Renewal Term, the Gross Rent and any other economic terms shall be subject to review by Landlord and Tenant and may be adjusted by mutual written agreement of the parties prior to the commencement of each Renewal Term.

Gross Rent shall be paid in monthly installments, in advance, on the first (1st) day of each month. Landlord reserves the right to direct Tenant to make all Gross Rent payments by wire into Landlord's designated account, such account information to be given in writing to Tenant at least five (5) business days prior to the date that such payment is due. Gross Rent and all other sums payable under the Lease shall be paid without notice, demand, set off, or deduction, and, except as provided in this Lease or by judicial determination, without abatement, suspension, diminution, or reduction. The obligations and liabilities of Tenant under the Lease shall in no way be released, discharged or otherwise affected (except as otherwise provided in this Lease or by judicial determination) by reason of any occurrence whatsoever. In the event any monthly installment is not paid to Landlord within ten (10) days of its due date, Tenant shall pay to Landlord a late charge of One Hundred and 00/100 Dollars ($100.00) as an agreed upon liquidated damage payment resulting from such late payment. Any forbearance by Landlord in collecting the late payment charge for an overdue monthly installment shall not constitute a waiver of any subsequent late payment charges to which Landlord is entitled hereunder. No payment by Tenant or receipt by Landlord of a lesser amount than the total rental payment as set forth herein shall be deemed to be other than a payment on account, and no endorsement or statement on any check or other communication accompanying a check for payment of any amounts payable hereunder shall be deemed an accord and satisfaction, and Landlord may accept such check as partial payment without prejudice to Landlord's right to recover the balance of any sums owed by Tenant hereunder or to pursue against Tenant any additional remedies available under this Lease or provided at law or equity.

Section 4. **Security Deposit**. Tenant shall pay Landlord a security deposit (the "Security Deposit") on or before the Commencement Date in the amount of Nine Hundred Fifty and 00/100 Dollars ($950.00). The Security Deposit shall be retained by Landlord in a non-interest-bearing account. Except as otherwise provided herein, Landlord shall refund the Security Deposit to Tenant within fifteen (15) days after the termination of this Lease, or following the complete evacuation of the Premises by Tenant, less any amounts reasonably required to repair or restore the Premises to the condition that existed on the Commencement Date, reasonable wear and tear excepted, or to pay or satisfy any outstanding terms or requirements of this Lease, including Tenant's obligation to pay all Gross Rent and other charges due hereunder.

Section 5. **Taxes; Insurance; Utilities and Services**. Landlord shall be responsible for payment of the real property taxes and insurance premiums for Landlord's Property. Landlord shall also pay all utility charges (including water, sewer, gas, electricity and other utility expenses), and internet services. Tenant shall be responsible for bringing trash and recycling to designated areas of the Facility Building, and Landlord shall be responsible for removal of trash and recycling from such receptacles. Tenant shall provide custodial services for the Leased Premises. Landlord shall be responsible for snow removal and the salting of exterior steps, ramps and egress to and from the entrances to Landlord's Property used to access the Leased Premises. Tenant shall pay when due all taxes assessed against Tenant on account of Tenant's personal property on the Premises, and Tenant's use and occupancy of the Premises under this Lease.

Landlord shall not be responsible for the failure of water supply, gas heat, power, electric current, telephone, or otherwise service, or any damage to property, occasioned by breakage, leakage or obstruction of any pipes and or other leakage in or about the Leased Premises, unless such damage is caused by Landlord's gross negligence or willful misconduct. Notwithstanding any of the foregoing, Landlord covenants that it will cooperate with Tenant and use commercially reasonable efforts to remedy any such cessation or interruption. If cessation of utility services ("Utilities Stop") prevents Tenant from operating its business in the Premises in any material respect and if such utility services are not restored within ten (10) days of such Utilities Stop, then the Gross Rent shall abate until such services are restored. Notwithstanding the foregoing, Rent shall not abate due to a Utilities Stop caused by a general outage due to weather or other general conditions or to any Utilities Stop caused by Tenant.

Section 6. **Use of Premises**. Tenant shall use and occupy the Premises for office space, and for

- 10 -

no other purpose without Landlord's written consent, which shall not be unreasonably withheld, conditioned or delayed.

Subject to the existing permits, Tenant shall be responsible, at Tenant's expense, to obtain any and all federal, state, and municipal permits and approvals that may be required in connection with its use, occupancy and operation of the Premises.

Tenant has a right to 1 parking spot in the designated lot. Access is allowed.

Section 7. **Maintenance, Repair and Replacement Obligations**. Tenant shall be responsible, at its sole cost and expense, for maintaining and repairing interior portions of the Premises, as may be reasonably required to place, keep and maintain the same in good order and state of repair, including, without limitation, engaging, at Tenant's sole cost and expense, custodial services for the Premises. If Tenant were to employ custodial services other than those provided by Landlord, Tenant must employ a bonded provider, and that service must be performed outside the school's operating hours. The school's operating hours are Monday through Friday, 7:30AM - 3:00PM.  Landlord shall be responsible for all other repair and maintenance of Landlord's Property and Facility Building.

Landlord is granted access to the suite and office for emergencies and/or maintenance issues.

Section 8. **Property Insurance**. Landlord will insure, at Landlord's cost, the Facility Building and all of Landlord's personal property therein against loss by fire, in such amounts as Landlord may consider reasonable, by policies which shall include standard extended coverage endorsements. Tenant shall be responsible for maintaining any and all insurance upon Tenant's property in and upon the Premises, by policies which shall name Landlord as an additional insured, as Landlord's interests may appear, and Landlord shall not be held responsible for any damage thereto unless caused by the gross negligence or willful misconduct of Landlord, its employees, agents or contractors. Neither Tenant nor Landlord, nor their respective agents, employees or guests, shall be liable to the other for any loss or damage to the Premises or the Facility Building or any improvements therein or thereon by fire or any other cause within the scope of such fire and extended coverage insurance, it being understood that the parties shall look solely to the insurer for reimbursement for such loss or damage.

Section 9. **Liability Insurance**. Tenant, at Tenant's own cost and expense, shall maintain a policy or policies of liability insurance insuring Landlord and Tenant against all claims or demands for personal injuries to or death of any person, and damage to or destruction or loss of property as a result of the use of the Premises. Such policies shall cover such risks and be in such amounts as Landlord from time to time may reasonably request, but in any event in an amount not less than $2,000,000.00 for injury to or death of any one person, and not less than $2,000,000.00 for damage to or destruction or loss of property.

Landlord shall be listed as an additional insured on Tenant's policy. Tenant shall deliver to Landlord a certificate of such insurance coverage upon execution of this Lease and annually thereafter.

Section 10. **Alterations; Landlord Work**.

(a)     Except as hereinafter expressly provided, Tenant shall not make or permit to be made any alterations, additions, changes or improvements in or to the Leased Premises without first obtaining the written consent of Landlord thereto (which consent Landlord agrees not to unreasonably withhold, condition or delay, provided Tenant is in full compliance with each and every one of the material terms, covenants and conditions in this Lease Agreement and, with respect to such alterations, additions changes or improvements, has provided Landlord with such liability insurance policies and/or surety bonds as Landlord may reasonably request).

- 10 -

(b)    Before requesting Landlord's consent, Tenant shall submit to Landlord detailed plans and specifications of such proposed alterations, changes, additions, or improvements. Landlord shall be entitled to withhold its consent to any such alterations, additions, changes or improvements, until such time as Tenant provides Landlord with reasonable evidence of the approval of such alterations, additions, changes or improvements by any and all municipal, state, federal or other governmental or other authorities, offices and departments now existing or hereafter created having jurisdiction in the Premises, which approvals Tenant shall obtain at its own cost and expense.

(c)    Landlord, its architect, agents, and employees, shall have the right to enter upon Leased Premises in a reasonable manner and at all reasonable times during the course of any such alterations, additions, changes or improvements for the purpose of inspection and of finding out whether such work conforms to the approved plans and specifications and with the agreement herein contained.

(d)    Tenant, at its own cost and expense, will cause any and all mechanics' liens and perfections of the same which may be filed against the Leased Premises to be paid and satisfied of record within thirty (30) days after Landlord shall send to Tenant written notice by registered mail of the filing of any notice thereof against the Premises or the owner, for or purporting to be for labor or materials alleged to be furnished or to be charged by or for Tenant at the Leased Premises. Alternatively, Tenant will bond such mechanics' liens within said thirty (30) day period and commence proceedings to have such liens discharged by an order of a court of competent jurisdiction as promptly as reasonably possible.

(e)    Any alterations, improvements or other work once begun must be prosecuted with reasonable diligence to completion and must be paid for by Tenant in full, free and clear of liens or encumbrances against the Leased Premises or Landlord, and must be performed in all respects in accordance with the law.

(f)    Any approval of any Tenant improvement shall be conditioned that at the expiration of the Term, Tenant remove the approved improvements (unless agreed upon in writing otherwise) and restore the Facility Building to its original condition.

Section 11. **Parties to Comply with Laws, Etc.**. Each party shall, at its own cost and expense, comply with any and all requirements imposed upon such party, and for which such party is responsible under this Lease, by present and future statutes, laws, ordinances, acts, rules, regulations, orders and requirements of every kind and nature, affecting the Premises or Tenant's use and occupancy thereof. Each party will further at all times during the term of this Lease, at such party's own cost and expense, indemnify and save harmless the other against and from and shall pay in full upon demand by the indemnified party any and each loss incurred, or penalty, claim or damage suffered, imposed, made or recovered by reason of the failure or neglect of the other party or its agents, contractors, employees or representatives to observe and comply with such laws, ordinances, rules, regulations and requirements.

Section 12. **Indemnifications**. Tenant shall indemnify and save harmless Landlord from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of every kind and nature, including Landlord's costs and reasonable attorneys' fees, suffered or incurred as a result of any breach by Tenant, its agents, servants, employees, visitors or licensees of any covenant or condition of this Lease, or as a result of Tenant's use or occupancy of the Leased Premises, or the negligence or willful misconduct of Tenant, its agents, servants, employees, visitors or licensees; provided, however, that it is understood and agreed that the obligations of Tenant hereunder shall not extend to the gross negligence or willful misconduct of Landlord, its employees, agents or

- 10 -

representatives. Tenant's obligations under this Section 12 shall survive the termination of this Lease, by expiration of the Term or otherwise.

Landlord shall indemnify and save harmless Tenant from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of every kind and nature, including Tenant's costs and reasonable attorneys' fees, suffered or incurred as a result of any breach by Landlord, its agents, servants, employees, visitors or licensees of any covenant or condition of this Lease, or as a result of Landlord's fulfillment of its obligations under this Lease, or the carelessness, negligence or improper conduct of Landlord, its agents, servants, employees, visitors or licensees; provided, however, that it is understood and agreed that the obligations of Landlord hereunder shall not extend to the gross negligence or willful misconduct of Tenant, its employees, agents or representatives. Landlord's obligations under this Section 12 shall survive the termination of this Lease, by expiration of the Term or otherwise.

Section 13. **Events of Default, Remedies, Damages.**

(a)   Each of the following shall constitute an "Event of Default":

(i)   Tenant shall fail to pay when and as due any Gross Rent or other charges due and payable under this Lease Agreement, and such default shall continue for a period of five (5) days after written notice of such default from Landlord to Tenant;

(ii)   Tenant shall fail to perform or comply with any of the agreements, terms, covenants or conditions in this Lease Agreement, other than those referred to in Subsection 13 (a)(i), for a period of thirty (30) days after notice from Landlord to Tenant specifying the items in default, or in the case of a default or contingency which cannot with due diligence be cured within said thirty (30) day period, Tenant shall fail to commence within said thirty (30) day period the steps necessary to cure the same and thereafter to prosecute the curing of such default with due diligence (it being understood that the time of Tenant within which to cure shall be extended for such period as may be necessary to complete the same with all due diligence); or

(b)   For so long as an Event of Default shall exist and be continuing, Landlord may give written notice to Tenant specifying the Event of Default and stating that Tenant's rights to the possession, use and occupancy of the Premises under this Lease Agreement shall expire and terminate on the date specified in such notice, which date shall be at least ten (10) days after the giving of notice, and upon the date so specified, all rights of Tenant under this Lease Agreement shall so expire and terminate.

(c)   Upon termination of Tenant's rights to possession, use and occupancy of the Premises under the Lease Agreement in accordance with the provisions of Section 13(b), above, Landlord shall by prompt written notice to Tenant elect to receive from Tenant the damages specified in Section 13(a).

(i)   Tenant shall pay Landlord an amount equal to: (x) any Gross Rent and any damages to the Premises which shall have been due or sustained prior to such termination, all reasonable costs, fees and expenses (including, but not limited to, reasonable attorneys' fees) incurred by Landlord in pursuit of its remedies

- 10 -

hereunder or in thereafter renting the Premises to others from time to time (which costs may include preparing the Premises for re-letting and of re-letting the Premises, but not fit up expenses for the new Tenant); plus (y) an amount equal to the Gross Rent which, but for such termination would have become due during the remainder of the term as then constituted, less the amount of Gross Rent, if any, which Landlord shall receive during such period from others to whom the Premises may be rented (other than any Additional Rent received by Landlord as a result of any failure of such other person to perform any of its obligations to Landlord). Any payments due under clause (x) of this Subsection 13(c)(i) shall be immediately due and payable. Payments due under clause (y) of this Subsection 13(c)(i) shall be due and payable in monthly installments, in advance, on the first day of each calendar month following termination of this Lease and continuing until the date on which the term would have expired but for such termination, provided, however, that in the event Tenant fails to pay such installments as and when due then the entire amount of such installments shall become immediately due and payable in full, discounted to present value, at the option of Landlord. Nothing in this paragraph shall be construed to limit or eliminate Landlord's common law duty to mitigate its damages.

Upon any termination of this Lease Agreement, Tenant shall immediately vacate the Premises and surrender the same to Landlord in the same condition as received, reasonable wear and tear and damage by fire or other casualty excepted. In the event Tenant fails to so vacate and surrender the Premises, Tenant shall pay all costs reasonably incurred by Landlord in requiring Tenant to vacate, including reasonable attorneys' fees and disbursements and, further, will pay Landlord a daily occupancy charge equal to one hundred fifty percent (150%) of the average daily rental payable by Tenant during the most recent Lease Agreement year until Tenant vacates the Premises as provided in the terms of this Lease Agreement. Tenant expressly agrees that, for so long as any Event of Default shall exist and be continuing, Landlord shall have the right to immediately regain possession of the Premises and to exclude Tenant from further use, occupancy and enjoyment thereof, and Tenant waives any and all claims which it may have against Landlord, regardless of when the same arise, on account of such regaining of possession by Landlord or such exclusion. Upon the termination of this Lease Agreement, Tenant will remove all goods and effects not the property of Landlord, at Tenant's expense. Any damage thereby caused to the Premises shall be promptly repaired by Tenant, at Tenant's expense. At Landlord's option, any goods and effects not so removed shall be deemed abandoned by Tenant and thereupon shall become the sole property of Landlord. In the event Tenant shall fail or refuse to vacate the Premises without breach of the peace after termination, Landlord may obtain a court order for the payment of rent into court in accordance with the terms of 12 V.S.A. § 4853(a). Landlord shall also have all other rights and remedies as may be available under applicable law at the time of the occurrence of the Event of Default.

If Landlord shall fail to perform or comply with any of the agreements, terms, covenants or conditions in this Lease Agreement for a period of thirty (30) days after notice from Tenant to Landlord specifying the items in default, or in the case of a default or contingency which cannot with due diligence be cured within such thirty (30) day period, Landlord shall fail to commence within said thirty (30) day period the steps necessary to cure the same and thereafter to prosecute the curing of such default with due diligence (it being understood that the time of Landlord within which to cure shall be extended for such period as may be necessary to complete the same with due diligence), then such failure shall constitute a "Landlord's Event of Default". Upon the occurrence of a Landlord's Event of Default, Tenant shall have the right to terminate this Lease and shall have all other rights and remedies as may be available under applicable law at the time of the occurrence of Landlord's Event of Default.

Section 14. **Environmental Covenants**.

(a)     Tenant shall not release or discharge any hazardous substances or other toxic materials in or about the demised Premises, or dump, flush or introduce any hazardous substances or other toxic materials into the septic, sewage or other waste disposal system serving the Premises. Tenant shall at all times comply with all applicable environmental protection, sanitary and safety laws, and rules, regulations and other governmental statutes or procedures governing same, including without limitation, the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C sec. 6901 et. seq.), the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq., as amended ("CERCLA"), and the Vermont Waste Management Statutes, Vt. Stat. Ann. Title 10, Ch. 159. The foregoing shall constitute a continuing covenant which shall survive the expiration or termination of this Lease.

(b)     Tenant shall unconditionally, absolutely and irrevocably agree to indemnify, defend and hold harmless Landlord and its officers, employees, agents, and contractors, from and against and to pay in full on demand by Landlord all loss, cost and expense (including, without limitation, attorneys' fees and disbursements and fees of other professionals advising Landlord) of whatever nature suffered or incurred by Landlord on account of the existence on the Leased Premises, or the release or discharge from the Leased Premises, of hazardous substances caused by Tenant or its employees, agents, licensees and subcontractors after the Commencement Date, including, without limitation, any claims, costs, losses, liabilities and expenses arising from the violation (or claimed violation) of any environmental laws or the institution of any action by any party against Tenant, Landlord or the Leased Premises based upon nuisance, negligence or other tort theory alleging liability due to the improper generation, storage, disposal, removal, transportation or treatment of hazardous substances by Tenant or its employees, agents, licensees and subcontractors, or the imposition of a lien on any part of the Leased Premises under the CERCLA, and the Vermont Waste Management Statutes, Vt. Stat. Ann. Title 10, Ch. 159, or any other laws pursuant to which a lien or liability may be imposed on Landlord due to the existence of hazardous substances by Tenant or its employees, agents, licensees and subcontractors. The above indemnification shall not be extinguished or diminished by Tenant's notice to Landlord of the generation, storage, disposal, removal, transportation or treatment of hazardous substances by Tenant or its employees, agents, licensees and subcontractors on the Premises, nor by Landlord's consent thereto or Landlord's co-applicant status on any permit applied for in connection therewith.

Section 15. Lease Not to be Recorded. If this Lease shall be recorded by or on behalf of Tenant, except at the express request of Landlord, at the option of Landlord, it thereupon shall be and become null, void, and of no further force or effect, and rights of Tenant hereunder shall cease; provided, however, that the parties expressly agree to execute a short-form notice of lease complying with the terms of 27 V.S.A. § 341(c), which may be recorded by either Landlord or Tenant.

Section 16. **Quiet Enjoyment**. Landlord covenants that Tenant, on paying all Gross Rent required to be paid by Tenant, and observing and performing all covenants and undertakings by Tenant to

be performed hereunder, shall and may peaceably have and enjoy said Premises for the Term aforesaid in accordance with the terms of this Lease.

Section 17. **Notices**. All notices, requests, demands, claims and other communications (a "Notice") hereunder shall be in writing, addressed to the intended recipient as set forth below:

If to Landlord:           Mater Christi School
                          Attn:
                          50 Mansfield Avenue
                          Burlington, VT 05401

                          E-mail: tloescher@materchristischool.net

If to Tenant:             Roman Catholic Diocese of Burlington Vermont
                          Attn: Lorei Dawson
                          P. O Box 2367
                          South Burlington, VT 05407

                          E-mail: ldawson@vermontcatholic.org

or to such other person, address or number as the party entitled to such Notice shall have specified by notice to the other party given in accordance with the provisions of this Section. Any such Notice shall be deemed duly given on the earliest of: (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by reputable overnight courier services (charges prepaid); (iii) one (1) business day after being sent to the recipient by facsimile transmission or electronic mail; or (iv) four (4) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid.

Section 18. **Disclaimer for Security**. Tenant acknowledges that the Premises including the Facility Building are not independently furnished with a security system. Tenant, with Landlord's consent (which shall not be unreasonably withheld), at its own cost and expense, install a security system and or security measures for the protection of the Premises and Tenant's personal property stored therein. Landlord shall not be held liable for any loss or damage, including loss or damage to Tenant's personal property, fixtures, or fit-up by reason of failure to provide adequate security or ineffectiveness of security measures undertaken. Tenant acknowledges that Landlord is not an insurer and Tenant assumes all risk of loss to its personal property, fixtures and fit-up from any deficiency in the Premises' security system, a

further acknowledges that neither Landlord nor its agents have made any representation or warranty, nor has Tenant relied upon any representation or warranty, express or implied, including any warranty of merchantability or fitness for any particular purpose relative to any security measures recommended or undertaken.

Section 19. **No Waiver**. The waiver by a party of a breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition, or of any subsequent breach of the same or any other term, covenant or condition. No covenant, term or condition of this Lease Agreement shall be deemed to have been waived or modified by a party, unless such waiver or modification is in writing and executed on behalf of the party against whom such waiver or modification is to be enforced.

Section 20. **Landlord's Right to Access**. Landlord or Landlord's agent shall have the right to enter the Premises in a reasonable manner and at all reasonable times, upon twenty-four (24) hours' prior notice, to examine the same, and to show them to prospective purchasers, mortgagees, or, during the last six (6) months of the Term, lessees. Such entry shall be done in a manner reasonably calculated to avoid any disruption or interruption of Tenant's business. If Tenant shall not be personally present to permit any entry into said Premises at any time, when for any reason an entry therein by Landlord shall by the terms of this Lease Agreement be expressly permissible, following the notice required above, Landlord or Landlord's agents may forcibly enter the same, without rendering Landlord or such agents liable therefore (if during such entry Landlord or Landlord's agents shall accord reasonable care to Tenant's property and shall repair any damage caused by such entry), and without in any manner affecting the obligations and covenants of this Lease. Nothing herein contained, however, shall be deemed or construed to impose upon Landlord any obligations, responsibility or liability whatsoever, for the care, supervision or repair, of the Leased Premises or a part thereof, other than as herein expressly provided.

Section 21. **Priority of Mortgages**. This Lease Agreement shall automatically and without further act or deed be and remain subject and subordinate to any existing mortgage and any mortgage or mortgages that may hereafter be placed against the Leased Premises, and to all renewals, modifications, consolidations, replacements, and extensions thereof, provided that any such subordination shall be conditioned upon the execution and delivery of non-disturbance agreements in a form reasonably acceptable to Tenant. Tenant will execute estoppel certificates and Subordination and Non-Disturbance Agreements in such reasonable form as may be requested in connection with such mortgages.

Section 22. **Assignment; Subletting**. This Lease shall not be assigned, nor the Premises sublet, without prior written consent from Landlord.

Section 23. **Delinquent Rent and Additional Rent; Holding Over**. If Tenant shall fail to pay any Gross Rent or any other charges within three (3) days of the date when the same is due and payable hereunder, the unpaid amount shall bear interest from the due date thereof to the date of payment at the rate of one and one-half percent (1 ½%) per month, provided, however, that if such rate is higher than the maximum rate of interest allowed under applicable law, the interest payable hereunder shall be the maximum rate allowed. Any holding over after the expiration of the term hereof shall be construed to be a tenancy from day to day only, at the rate of one hundred fifty percent (150%) of the Gross Rent in effect immediately prior to such expiration (prorated on a daily basis) and otherwise on the terms and conditions herein specified so far as applicable.

Section 24. **Termination**. On the termination date of the Term, Tenant shall: (a) immediately vacate the Premises and surrender the same to Landlord; (b) repair all damage to the Premises and the fixtures and personal property of Landlord located on the Premises caused by Tenant's removal of its furniture and trade fixtures; and (c) at the option of Tenant either: (i) abandon all permitted improvements, alterations and modifications made by Tenant to the Premises prior to the date of termination, in which event such permitted improvements, alterations and modifications shall be and become, without further action on the part of Tenant, the property of Landlord free and clear of all claims by Tenant and any person claiming by, through or under Tenant; or (ii) remove said permitted improvements, alterations and modifications and restore the Premises to the same condition which existed on the Commencement Date, reasonable wear and tear excepted.

Upon termination of this Lease for any of the reasons permitted herein (including, without limitation, expiration of the term), all rights, obligations and liabilities of either party accruing under this Lease shall terminate, except for those rights, obligations, and liabilities which accrued prior to the date of termination. The parties' indemnification obligations shall survive the termination or expiration of this Lease Agreement.

Section 25. **Damage or Destruction**. If the Premises are damaged by fire or by any other cause, the following provisions shall apply:

(a)      If the damage is to such extent that the cost of restoration, as reasonably estimated by Landlord, will equal or exceed $100,000.00, Landlord may, no later than sixty (60) days following the damage, give Tenant a notice stating that Landlord elects to terminate this Lease Agreement. If such notice shall be given: (i) this Lease Agreement shall terminate on the third (3rd) day after the giving of said notice; (ii) Tenant shall surrender possession of the Premises within a reasonable time thereafter; and (iii) all rent (including Gross Rent) shall be apportioned as of the date of such surrender and any rent paid for any period beyond said date shall be repaid to Tenant.

(b)      If the cost of restoration, as reasonably estimated by Landlord, shall amount to less than $100,000.00, or if despite the cost Landlord does not give notice to Tenant of its election to terminate in accordance with Section 24, above, Landlord shall restore the Premises with reasonable promptness, subject to delays beyond Landlord's control, and Tenant shall not have the right to terminate this Lease Agreement on account of such damage (unless such restoration cannot be completed within ninety (90) days of the date of casualty, in which event Tenant will have the right to terminate this Lease Agreement forthwith, by written notice to Landlord).

Landlord need not restore fixtures, improvements or other property of Tenant.

In any case in which the use of the Premises is affected by any such damage, there shall be either an abatement or a reduction in Gross Rent during the period for which the Premises are not reasonably usable for the purposes for which they are leased hereunder, the amount of such abatement or reduction to fairly and appropriately reflect the degree to which Tenant is thereby prevented from using the Premises for such purposes. The words "restoration" and "restore" as used in this Section shall include repairs.

Section 26. **Landlord not Personally Liable**. If Landlord or any successor in interest of Landlord is a mortgagee, or an individual, joint venture, tenancy in common, corporation, limited liability company, firm or partnership, general or limited, it is specifically understood and agreed that, in the absence of a person's gross negligence or willful misconduct, there shall be absolutely no personal liability on the part of such mortgagee or such individual or on the part of the members of such corporation, limited liability company, firm, partnership or joint venture with respect to any of the terms, covenants and conditions of this Lease, and that Tenant shall look solely to the equity of Landlord or such successor in interest in the Premises for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord or by Landlord's successor of any of the terms, covenants and conditions of this Lease to be performed by Landlord, such exculpation of personal liability to be absolute and without any exception whatsoever.

- 10 -

Section 27. **Broker Commissions**. The parties hereto warrant and represent to each other that they have no knowledge of any real estate broker or agent to whom a commission may be payable as a result of this transaction or any such knowledge of any other finder's fees or commissions related thereto. Each party agrees to indemnify and hold harmless the other for all claims or demands of any real estate agent or broker claiming by, through or under such party other than as described herein. This indemnification shall also include payment of costs and attorneys' fees incurred by a party in defense of a claim for such real estate commissions or fees.

Section 28. **Signs**. Tenant may not install or display any sign, logo or advertising medium on any existing free-standing sign or the outside of the Premises or the underlying Landlord's Property without Landlord's prior consent to the sign, display or advertising medium.

Section 29. **Authorization and Binding Effect of Agreement**. The execution, delivery and performance of this Lease and each other document or instrument required to be delivered pursuant hereto by Landlord and Tenant have been duly authorized by their respective Boards of Directors or Managers or Members as the case may be, and this Lease and each other document or instrument required to be delivered pursuant hereto is the legal, valid and binding obligation of Landlord and Tenant and is enforceable against Landlord and Tenant in accordance with its respective terms; subject, as to enforcement only, to bankruptcy, insolvency, reorganization, moratorium or similar laws at the time in effect affecting the enforceability of the rights of creditors generally.

Section 30. **Successors and Assigns**. All the terms and conditions of this Lease shall be binding upon and shall inure to the benefit of the parties and the successors and permitted assigns of the parties hereto. The term "Landlord" means only the owner of the Leased Premises for the time, and upon any transfer of fee simple title to the Leased Premises, the transferor shall automatically be relieved of all obligations under this Lease accruing after the transfer of title, and the transferee shall automatically be and become responsible for all obligations of Landlord hereunder.

Section 31. **Waiver of Rule of Construction**. The parties waive the benefit of any rule that this Lease is to be construed strictly against one party or the other.

Section 32. **Entire Agreement, Applicable Law**. This Lease with any exhibits and riders attached hereto contains the entire agreement of the parties with respect to the lease of the Premises and no representations, inducements, promises or agreements not embodied herein shall be of any force or effect, unless the same are in writing and signed by or on behalf of the party to be charged. The captions of particular sections are inserted as a matter of convenience only and are in no way to affect or define the scope or intent of this Lease or any provision thereof. This Lease shall be governed by and interpreted in accordance with the laws of the State of Vermont.

Section 33. **No Option**. A submission of this Lease for examination does not constitute a reservation of or option for the Premises and this Lease becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant.

Section 34. **Bankruptcy Court Approval**. Notwithstanding any other provision of this Lease Agreement, this Lease Agreement and the Tenant's obligations herein shall be contingent on Tenant's receipt of an order from the United States Bankruptcy Court for the District of Vermont in Case 24-10205 authorizing the Tenant to enter into this Lease Agreement and perform hereunder. If such order is not received by Tenant, this Lease Agreement shall be null and void and Tenant shall have no obligations under this Lease Agreement.

*[Signature Page Follows]*

- 10 -

IN WITNESS WHEREOF, the parties, as evidenced by the signatures of their Duly Authorized Agents, do hereby execute this Lease Agreement as of the dates set forth below.

LANDLORD:

MATER CHRISTI SCHOOL

_7/2/2026_
Date

By: _Tim Loescher_
Duly Authorized Agent

TENANT:

ROMAN   CATHOLIC   DIOCESE   OF BURLINGTON VERMONT

_7/2/26_
Date

By:_Roed Baldwin CFO_
Duly Authorized Agent

[Signature Page to Lease Agreement by and between Mater Christi School and Roman Catholic Diocese of Burlington Vermont]