**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 24-10205-HZC** |
| **ROMAN CATHOLIC DIOCESE OF** | ) | |
| **BURLINGTON, VERMONT,** | ) | **Chapter 11** |
| | ) | |
| **Debtor** | ) | |

**OBJECTION AND OPPOSITION OF THE PARISHES TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER ENFORCING THE AUTOMATIC STAY**

NOW COME Christ the King Parish in Rutland, St. Augustine Parish in Montpelier, St. Monica Parish in Barre, Mater Dei Parish in Newport, Christ the King St. Anthony Parish in Burlington, St. John the Baptist Parish in North Bennington, and Holy Cross and our Lady of Grace Parish in Colchester (collectively the "Parishes"), by and through their attorneys, Kaveh S. Shahi, Gfeller Laurie LLP, and respectfully object to and file this opposition memorandum to the motion (Doc. 856) filed by The Official Committee of Unsecured Creditors (the "Creditors' Committee") for an Order to Enforce the Automatic Stay as to the declaratory judgment action brought by the Parishes in this district court, entitled *Christ the King Parish in Rutland, et al v. P.A.*, *et al*, Docket No. 2:26-cv-249, filed on July 21, 2026 (the "Federal Declaratory Action").[1]

## I. BACKGROUND

In December 2025 and January 2026, seven claimants in this bankruptcy case filed suits in

[1]The caption in the Federal DJ Action consists of the names of six individuals who are claimants in this bankruptcy and for that reason their initials are used here despite the fact that these individuals brought suit in state courts in their full names and thereby waived any confidentiality related to their identities.

state courts in Vermont against the Parishes:

- *P.A. v. Saint Monica Parish in Barre, Mater Dei Parish in Newport, et al,* Washington Unit, Docket No. 26-CV-00421*,*
- *D.S. v. Christ the King Parish in Rutland, St. Augustine Parish in Montpelier*, et al, Washington Unit, No. 25-CV-05691,
- *M.F. v. Christ the King Parish in Rutland,* et al, Washington Unit, Docket No. 25-CV-05690,
- *M.R. v. Christ the King Parish*, et al, Docket No, 25-CV-05703,
- *C.C. v. Christ the King Parish*, et al, Docket No. 25-CV-05703,
- *C.B. v. Christ the King Parish,* et al, Docket No. 25-CV-05703,
- *Doe v. St. John the Baptist Parish in North Bennington*, *et al,* Docket No. 25-CV-00066.

(Collectively referred to as "State Court Suits" brought by "State Court Plaintiffs"). (Doc. 808-1, Ex C, pp.1-28).

The State Court Plaintiffs sought tort recovery and other relief from the Parishes as well as the respective Parish trusts which hold parish properties. The state courts in ruling on the Parishes' motions to dismiss, *sua sponte* stayed the State Court Suits in entries issued on May 29, 2026 and July 14, 2026. (Doc. 808-1, Ex E, pp.47-57). The state courts expressed concern over potentially overlapping issues with the bankruptcy court as well as significant constitutional questions that had to be addressed before a merits determination. *Id.*

On July 21, 2026, the Parishes filed the Federal Declaratory Action against the State Court Plaintiffs. (Ex A to Michael Affidavit).

On July 28, 2026, this Court granted the Creditors' Committee standing to commence an adversary proceeding against the Roman Catholic parishes in Vermont and others (the "Adversary

Proceeding"). (Doc. 843).

On August 21, 2026, the attorney who represents the State Court Plaintiffs accepted the waiver of service of the Federal Declaratory Action under Fed. R. Civ. P. Rule 4.

On August 24, 2026, the parishes (the Parishes and the other parish defendants) filed a motion in district court to withdraw the referral of the Adversary Action. 28 U.S.C. §157(d).

## II. ARGUMENT

### 1. The Automatic Stay Does Not Apply to the Federal Declaratory Action

The Motion asserts without any applicable authority that the Federal Declaratory Action filed by the Parishes in this district court against the State Court Plaintiffs to determine the constitutionality of the State Court Suits as well as the Adversary Proceeding is the property of the Diocese's bankruptcy estate and/or interferes with the causes of action pursued in the Adversary Proceeding. Bankruptcy Code section 362(a)(3). This assertion fails for several reasons.

#### a. The Parishes' Constitutional Claims Are Not the Causes of Action of the Diocese Bankruptcy Estate

The causes of action in the Adversary Proceeding were described by this Court as follows:

1) declaratory relief that the [Parishes] are not separate legal entities and are divisions of the Diocese;
2) declaratory relief that all assets of the [Parishes] constitute property of the Diocese bankruptcy estate;
3) declaratory relief that the Parish Trusts are self-settled trusts subject to the claims of the creditors;
4) avoidance and recovery of intentional fraudulent transfers of Diocese property into the Parish Trusts;
5) avoidance and recovery of constructively fraudulent transfers into the Parish Trusts; and
6) turnover of assets currently in the name of the Parish Trusts.

(Doc. 843, p.2). No constitutional causes of action are asserted in the Adversary Proceeding. Putting

aside the conceptual difficulty of understanding how the Diocese would have standing to assert the parishes' constitutional claims, the contention that the Federal Declaratory Action is pursuing the causes of action that belong to the bankruptcy estate of the Diocese can be readily rejected as the Adversary Proceeding does not assert any such claims.

**b. To the Extent the Federal Declaratory Action Raises the Parishes' Constitutional Defenses to the Adversary Proceeding, the Parishes Cannot be Compelled to do so in Bankruptcy Court and Cannot be Enjoined from Pursuing their Defenses**

Bankruptcy courts are not Article III and therefore absent consent, the Parishes cannot be compelled to litigate their constitutional rights in bankruptcy court. *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S.Ct.1932 (2015). The Motion cites a Seventh Circuit decision, *Listecki v. Comm. of Unsecured Creditors,* 780 F.3d 731, 741-50 (7th Cir. 2015), issued a few months before *Sharif,* for the proposition that a bankruptcy court can adjudicate constitutional issues implicated in bankruptcy. (Doc. 856, pp. 9-10). It is telling that the page citation covers nine pages, 741-50, of the opinion. The Seventh Circuit discussed the defense of Free Exercise raised in an adversary proceeding but other than the vague notion that by its procedural history the bankruptcy court may have adjudicated the Free Exercise defense in the first place, Seventh Circuit did not issue any holding that remotely resemble the proposition stated in the Motion. Inasmuch as anything can be gleaned from this decision, it is that if the bankruptcy court initially addressed the Free Exercise issue, it was part of the procedural history and did not become an issue by way of an objection.

The Motion also cites *In Re Roman Catholic Archbishop of Portland,* 335 B.R. 842, 853 (Bankr. D. Or. 2005). Although this citation is to a specific page, noting on that page or elsewhere in the court's decision can be read to support the proposition that bankruptcy courts can adjudicated

Article III controversies such as constitutional issues without the consent of the litigants. Ten years after the Oregon district court issues its decision, the Supreme Court in *Sharif* rejected the contention made in the Motion. Again, the Oregon decision appears to come with a procedural history that did not raise the issue of the bankruptcy courts adjudicating constitutional law issues.

The Parishes have made it explicitly known that they do not consent to the bankruptcy court adjudicating the constitutional issues raised in the Federal Declaratory Action. (Ex A Michael affidavit, ¶1; *See also* Doc.841, ¶8).

**c. The Federal Declaratory Action Does Not Exercise Control Over the Assets of the Diocese's Estate**

None of the cases cited in the Motion support the contention that the Federal Declaratory Action improperly exercises control over the assets of the Diocese's estate. The two cases cited involve completely different factual circumstances.

*In re Prudential Lines Inc*., 928 F.2d 565, 574 (2d Cir. 1991) involved complex tax issue with a parent company filing that adversely affected the subsidiary/debtor's ability to carryforward its net operating loss to offset future income. The Court held the carryforward of the net operating loss was a property of the estate and enjoined the parent from taking a deduction that would essentially destroy the carryforward. This case has no application factually or otherwise to the Federal Declaratory Action. The Parishes are not the parent companies of the Diocese and there is no tax issue.

*48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035 (1988) involved a landlord's notice of termination of a restaurant primary lease which would have resulted in the destruction of the

debtor's sub-tenancy. Under New York law the termination of the primary lease also eliminated the sublease held by the debtor, and therefore the Court concluded that landlord should be stopped from destroying the debtor's sublease. Again, factually this decision has no application here.

The Parishes are exercising their constitutional right to access the federal district court to seek relief on the constitutional issues raised in the Federal Declaratory Action. Had the parishes been willing to consent to the bankruptcy court adjudicating the constitutional issues, those issues would have been raised by way of defenses and/or counterclaim for declaratory relief. The Parishes right to raise defenses in the Adversary Proceeding cannot be subject to the automatic stay just because they may diminish or defeat the causes of action asserted in the adversary proceeding. The entire point of raising defenses is to defeat the claims asserted. No court has held and none will say that because defenses can defeat the claims in an adversary proceeding, the defendants should be enjoined from raising them. The fundamental right to due process would be otherwise seriously violated.

The only difference between the Parishes raising defenses in the adversary proceeding and asserting them through the Federal Declaratory Action is the Parishes' right to insist on an Article III court to adjudicate the constitutional issues. The claims asserted in the Adversary Action are flawed and should be challenged and ultimately will be defeated. Though displeasing to the Creditors' Committee, this exercise cannot be enjoined or otherwise stayed.

**2. The Motion Is Subject to Judicial Estoppel**

As this Court indicated, the concept of judicial estoppel is recognized in this Circuit:

> Judicial estoppel is an equitable doctrine which holds "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume

> a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust),* 634 F.3d 678, 695 (2d Cir.2011) (internal citations omitted). "Typically, judicial estoppel will apply if 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Id.* (internal citations omitted);

*In re Gutierrez*, 528 B.R. 1, 27 (Bankr. D. Vt. 2014). It will be shown below that the Creditors' Committee is judicially estopped from asserting the automatic stay relative to the litigation between the State Court Plaintiffs and the Parishes in the Federal Declaratory Action.

**a. Inconsistent Positions**

The filing of the State Court Suits was tantamount to the position taken by the State Court Plaintiffs (the defendants in the Federal Declaratory Action) that the State Court Suits were not subject to the automatic stay. In other words, contrary to the allegations in the first cause of action against the parishes in the Adversary Proceeding, the parishes are not "[m]erely unincorporated operating divisions of the Diocese that use diocesan property that is subject to the claims of the Diocese's creditors, including the Survivors." (Doc. 849, ¶86). Furthermore, the allegations in the second and third causes of action against the parishes in the Adversary Proceeding that "[P]arish Trust, are, in fact, property of the estate under Bankruptcy Code section 541" and the trusts "[c]onstitute property of the bankruptcy estate available to satisfy the claims of the Survivors" (*Id.* ¶s 90, 100) are not consistent with the filing of the State Court Suits. Otherwise, the State Court Suits was a violation of the automatic stay.

Parenthetically, the State Court Suits were filed at the direction, control and/or participation of the Creditors' Committee. This is evident by the fact that the State Court Suits were sealed under

12 V.S.A. §522(b). On May 29, 2026, the state court in Washington County ruled on the Parishes motion to dismiss, granting and denying in part, and staying the cases. (Doc. 808-1, Ex E, pp.47-57). On June 28, 2026, the Creditors' Committee filed in this Court as exhibits the State Court Suits in Washington County and related court filings under seal. (Doc, 808-1, Ex C-D). Two weeks later, on July 14, 2026, the Washington County Superior Court granted the Parishes' motion to unseal. (Ex 1). The motion to unseal was filed because the mixed ruling on the motions to dismiss including the issuance of the stay order led to some uncertainty as to whether under the statute, the records remained sealed after the rulings on the motions to dismiss. It was the Parishes' position that the records were unsealed but prudence dictated seeking a court order under the circumstances with a ruling on the motion to dismiss that did not fit the statutory language.

It can be concluded that well before June 28, 2026, and the unsealing on July 14, 2026, the Creditors' Committee was privy to the then sealed state court records. This was possible only if the Creditors' Committee was part of the effort to prosecute the State Court Actions.

**b. <u>The State Courts Adopted the State Court Plaintiffs' Position</u>**

The state courts entertained the State Court Suits and issued rulings on the motions to dismiss. The complaints were sustained in part in the ruling to the extent the motions to dismiss were denied. Therefore by allowing the State Court Suits to undergo motion practice and the denial in part of the motion to dismiss, the state courts adopted the position of the plaintiffs that the suit was properly filed.

**c. <u>Unfair Advantage</u>**

By seeking to impose the automatic stay on the Federal Declaratory Action, the Creditors' Committee is seeking an unfair advantage against the parishes. The parishes filed the Declaratory

Relief Action in response to the rulings on the motions to dismiss in the State Court Suits, and specifically footnote 3 of the master opinion that acknowledged the import of the constitutional issues and that "[t]hey pose complicated and serious concerns that will have to be addressed before this litigation can proceed to any type of merits determination." ( Doc. 808-1, p.50). Having triggered the sequence of events that led to the filing of the Declaratory Relief Action, the Creditors' Committee should be estopped from seeking to impose the automatic stay on that action.

## III. CONCLUSION

There is no valid reason to impose the automatic stay or otherwise enjoin the Parishes from asserting their defenses to the Adversary Proceeding in a procedurally proper manner by filing a declaratory relief action in the district court. The motion should be denied.

Dated this 25th day of August, 2026.

Respectfully Submitted,

By: */s/ Kaveh S. Shahi*

Kaveh S. Shahi, Esq.
GFELLER LAURIE LLP
110 Merchants Row, Ste. 3
Rutland, VT 05701
(802) 775-8800
kshahi@gllawgroup.com
*Attorneys for the Parishes*

# Exhibit 1

Vermont Superior Court
Filed 07/14/26
Washington Unit

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 25-CV-05690

**M F v. Christ the King Parish in Rutland, et al**

# ENTRY REGARDING MOTION

Title: Motion to Unseal (Motion: 5)
Filer: Kaveh S. Shahi
Filed Date: June 24, 2026

The motion is GRANTED.

Defendants' unopposed motion to unseal is **Granted.** The Court concurs with Defendants' analysis that the resolution of the prior motion to dismiss effectively triggered the unsealing of this action pursuant to 12 V.S.A. § 522(b). Particularly in light of the lack of further motions to either modify or retain the seal, the Court finds no basis to continue the seal against the right of public transparency that is the default for civil filings.

**So Ordered.**

Electronically signed on 7/13/2026 5:41 PM pursuant to V.R.E.F. 9(d)



Daniel Richardson
Superior Court Judge